# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

DAVID AARON GOODMAN, )
)
    Plaintiff/Counter-Deft./ ) Shelby Circuit No. 149212 R.D.
    Appellant, )
)
VS. ) Appeal No. 02A01-9809-CV-00255
)
HALLE LYNN HIRSH GOODMAN, )
)
    Defendant/Counter-Pltf./ )
    Appellee. )

FILED

August 9, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE KAY S. ROBILIO, JUDGE

**STEVAN L. BLACK**
**VICKIE HARDY JONES**
Memphis, Tennessee
Attorneys for Appellant

**AMY J. AMUNDSEN**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED AS MODIFIED**

                                          **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**
    David Aaron Goodman ("Husband" or "Appellant") appeals the judgment of the trial

court which awarded a divorce to Halle Lynn Goodman ("Wife" or "Appellee"), found Wife to be incapable of being rehabilitated and ordered Husband to pay the sum of $2,200.00 per month to Wife as alimony *in futuro,* and the sum of $16,961.25 as alimony *in solido* for Wife's attorney fees, and further ordered Husband to pay credit card debt in the amount of $22,000.00 incurred by Wife after separation.

## I. Factual and Procedural History

The parties were married on August 15, 1982, and separated in July 1995. The parties have two minor children. Husband filed for divorce June 5, 1995 and Wife filed an answer and counter-complaint for divorce. Although Husband stipulated that Wife be awarded the divorce on the ground of inappropriate marital conduct, there was proof in the record that the parties' marital difficulties were far-reaching.

Dr. Gloria Siegel, Wife's clinical psychologist, began treating Wife in March 1994. Dr. Siegel diagnosed Wife as having major depression and a borderline personality disorder which began in Wife's early adolescence. Wife was hospitalized at Charter Lakeside Hospital on two different occasions in 1995 because of her severe depression and suicidal planning. Dr. Siegel testified that Wife is not capable of employment, or rehabilitating herself or being a full time student.

The trial court found Wife to be economically disadvantaged and found that rehabilitation was not feasible. The trial court ordered Husband to pay $16,961.25 as alimony *in solido* for Wife's attorney fees, ordered Husband to pay the credit card debt of $22,000.00 incurred by Wife after the parties' separation, and awarded alimony *in futuro* to Wife, but reserved the determination of the amount of alimony to a later date.

The final decree also set forth and approved the stipulations and agreements reached by the parties, including the following: that Wife would be awarded the divorce on the ground of inappropriate marital conduct; that Wife would receive sole custody of the

2

parties' two minor children and that Husband would enjoy specific time with the children; that Husband would pay child support in the amount of $1,800.00 per month in accordance with the Tennessee Child Support Guidelines; that Husband would maintain life insurance policy and a disability insurance policy to secure his obligations to the children; that Husband would maintain a major medical and hospitalization insurance for the children; that Husband would pay all of the uninsured medical expenses for the children; that Husband and Wife would attend parenting classes; that Husband would pay for the children's summer camps, religious affiliated activities, Hebrew lessons, extracurricular activities, and future life cycle events including expenses of B'nai/Bat Mitzvahs; that Husband would pay for memberships for Wife and the children at the Memphis Jewish Community Center, Temple Israel, Memphis Pink Palace and Planetarium, and the Memphis Zoo; that the marital property would be divided by awarding the leased Taurus to Husband, the 1988 Dodge Caravan to Wife, and each party receiving one-half of Husband's retirement from his employment at Pediatrics Associates.

Husband is a doctor who completed his residency in pediatrics in 1996. Husband practices medicine in a pediatric clinic in West Memphis, Arkansas, and is paid a gross salary of $90,000.00 per year. Husband also receives income of approximately $5,000.00 per year from his interest in a limited partnership. At the hearing to set alimony, the trial court found Husband's total monthly income to be $8,100.00. There was also much testimony and comment concerning monies that Husband has borrowed from his parents since approximately 1989. There was testimony that Husband was able to borrow from a trust in which his mother is the beneficiary. Husband testified he borrowed approximately $68,000.00 from his mother to meet court-ordered financial obligations and his own living expenses during the divorce proceedings.

After holding hearings to determine the amount of alimony to be awarded to Wife, the court ordered Husband to pay $2,200.00 per month as alimony *in futuro*. Husband filed a motion to alter or amend, or in the alternative, for relief from the judgment. On August 14, 1998, the trial court entered an order on that motion, denying Husband's requests for

3

reduction in alimony, denying Husband's request to be relieved of the credit card debt, and amending the final decree to make a finding that an improvement in Wife's medical condition and reduction in Wife's medical expenses shall constitute a material change of circumstances sufficient to justify some relief in Husband's alimony obligations. This appeal by Husband followed.

## II. Alimony

Husband's main contention on appeal is that after paying child support in the amount of $1,800.00, alimony in the amount of $2,200.00, children's monthly extra-curricular activities expense in the amount of $200.00, and $652.00 in monthly uninsured medical expenses for the children, he is left with only $562.00 per month to pay his own living expenses. Husband argues there was no proof that he had "moonlighted" in the past; the court did not find Husband to be voluntarily underemployed; Husband's parents may cease giving him money at any time; Husband was obligated to repay all monies borrowed from his mother's trust with interest; and Husband would only inherit money from his mother if she bequeaths the money to him and if mother predeceases him. Husband further argues that Wife should have been awarded rehabilitative alimony rather than alimony *in futuro*. Husband also contends he lacks the property or assets with which to pay the $16,961.25 award of alimony *in solido*. He asserts the trial court could have made such a ruling based only on Husband's anticipated future earnings.

Wife contends that Husband's expenses are inflated; his parents provide him with extra money upon which to live; Husband will inherit over $2,000,000.00 from his parents over the course of his lifetime; and Husband can "moonlight" to earn extra money. Wife also points out that during their marriage the parties had lived in a home purchased for them by Husband's mother. In 1998, Husband's mother asked Wife and children to move out of the home. The court determined that the trust monies of the children ($120,000.00 per child) could be used to purchase the home from Husband's mother for the benefit of the children, but Husband, as trustee of the trusts, refused.

4

Trial courts have broad discretion concerning the amount and duration of spousal support. Jones v. Jones, 784 S.W.2d 349, 352 (Tenn.App. 1989). These determinations are factually driven and require a balancing of the factors contained in Tenn. Code Ann. §36-5-101(d). As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion. Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn.App. 1986). With regard to alimony, courts are required to apply the factors set out in Tenn. Code Ann. §36-5-101 to determine whether alimony is necessary or appropriate.

## A.  Alimony *in futuro* v. Rehabilitative Alimony

Husband argues that the trial court erred in finding that Wife was incapable of rehabilitation and in awarding Wife alimony *in futuro*. We disagree. The evidence proffered at trial showed Wife had never worked full time at a job outside the marriage. The extent of Wife's work/volunteer experience consisted of planning birthday parties for children briefly after the parties' first child was born; volunteer reading to children or playing games with children at St. Jude Children's Research Hospital; part-time assistant teacher's aide at Grahamwood Elementary school for a few hours a day while the parties' children were in nursery school there; helping a lawyer move into her new office for a couple of months; and babysitting an infant for seven months. The trial court found that Husband offered no proof of any sustained employment by Wife during their marriage.

Wife's psychologist, Dr. Gloria Siegel, testified that Wife had extensive psychological and psychiatric treatment before, during and after the marriage for severe depression and borderline personality disorder. When Dr. Siegel first saw Wife in 1994, Wife was severely depressed almost in a vegetative state, tearful and her mood was intensely dysphoric. Wife's condition worsened and she was hospitalized at Charter Lakeside Hospital on two different occasions, April of 1995 and May of 1995, each for several weeks because of her severe depression and suicidal planning.

5

Dr. Siegel testified that she instructed Wife to discontinue to babysit the infant because it caused too much stress on Wife. Dr. Siegel testified that she would ordinarily encourage a person to go to school, however, Wife has the personality makeup of a person who would blame herself for anything that would go wrong. Dr. Siegel gave her professional opinion that Wife is not capable of employment, of rehabilitating herself or of being a full time student. Husband offered no expert testimony to rebut Dr. Siegel's expert opinions.

We do not believe the trial court abused its discretion in ordering Husband to pay Wife alimony *in futuro* rather than rehabilitative alimony. Our Supreme Court has noted that while the legislature has expressed a preference for rehabilitative alimony, a court may grant alimony *in futuro* where rehabilitation is not feasible. Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn.1995); Self v. Self, 861 S.W.2d 360, 361 (Tenn.1993); Tenn. Code Ann. § 36-5-101(d)(1)(1996). The evidence presented at trial supports the trial court's finding that Wife is incapable of being rehabilitated.

Furthermore, on motion of Husband to amend the final decree, the trial court amended the final decree to make a finding that an improvement in Wife's medical condition and a reduction in her medical expenses shall constitute a material and substantial change of circumstances sufficient to justify some relief in Husband's alimony obligation. The trial court ordered that Husband be entitled to receive from Wife's therapist, a report of the status of Wife's therapy, including Wife's current mental status, a format or plan for future therapy, and a listing of goals and the objectives set to meet those goals. With this additional safeguard in place, we hold that the trial court did not err in awarding Wife alimony *in futuro* rather than rehabilitative alimony.

## B. Award of Alimony *in futuro*

The trial court ordered Husband to pay the sum of $2,200.00 per month to Wife as alimony *in futuro*. Husband argues that the trial court did not consider his ability to pay in

ordering said amount of alimony. The evidence showed Husband's income to be $90,000.00 per year from his employment and approximately $5,000.00 per year from a limited partnership interest. Husband points out that his monthly gross income is $7,500.00 which, after standard deductions, amounts to $5,414.39 net income per month. Husband's contends that his monthly support obligation to Wife and children totals $4,852.00 ($1,800.00 child support, $2,200.00 alimony, $200.00 average children's monthly extra-curricular activities, $652.00 average children's monthly uninsured medical expenses). This leaves Husband only $562.00 to live on each month.

At trial, Wife did not contend that Husband earned more than ninety thousand dollars per year from his employment and did not contend that Husband had other sources of income other than $5,000.00 per year from the limited partnership given to Husband by his grandparents. The trial court did not find that Husband made more money than he claimed or was willfully and voluntarily underemployed. Thus, the uncontroverted evidence was that Husband's total income was $95,000.00 per year.

There was much discussion during the trial of monies given to the Husband by Husband's parents. Wife contends that Husband is the beneficiary of four trusts that will yield him in the future an amount of Two Million Dollars ($2,000,000.00). Wife asserts that Husband can draw from the trusts as often as he needs to, and that Husband has a note of $200,000.00 from which he has only used $60,000.00.

Husband testified that he has borrowed money from his parents since approximately 1989 in order to pay his expenses, as he and Wife lived beyond their means during their marriage. Husband further testified that, recognizing the inability of the parties to meet their financial obligations during this divorce litigation, he borrowed approximately $68,000.00 from his mother to meet the court-ordered financial obligations and his own living expenses, as the aforementioned expenses exceeded his income.

Husband points out that his mother, Donna Goldman, is the beneficiary of said

7

trusts. Husband has no present interest in these trusts and will not acquire an interest unless his mother bequeaths the funds to him and his mother predeceases him. Husband asserts that he does have the present ability to borrow money from his parents, but such money has to be repaid with interest. Additionally, Husband's parents could decide at any time to cease making such loans to Husband.

There is evidence in the record that the trial court considered the loans made by Husband's parents to the parties. During a hearing held before the trial court, the court stated as follows:

> Well, its true, the evidence is replete that Dr. Goodman has never had to live off his income ever, never, ever, and I'm sure in the future he won't necessarily have to in - - you know, live off his income because his parents are in a position to advance funds to him at their discretion, but that has nothing - - that can't enter into my ruling.

However, the trial judge remarked repeatedly throughout the course of the trial that Husband had monies from his parents available to him. To the extent, if any, that the trial court considered the monies available to Husband from Husband's parents in setting the amount of alimony, the trial court was in error.

Husband also asserts that the trial court took into account Husband's ability to earn extra money by moonlighting in setting the amount of alimony. Husband testified that although his contract does not prevent him from moonlighting, he was working forty (40) hours per week and was on call seven days per month. Husband also testified that if he were to moonlight, he would have less time available to spend with his children. Husband's employer filed an affidavit with the trial court wherein she stated that it was undesirable for Husband to moonlight, as it would compromise patient care because Husband was already working significant hours.

At trial, Wife testified that it was not Husband's practice to moonlight and that he did not do so throughout medical school or "any of those times." During the first hearing, the trial court found that it was not the history of Husband to moonlight during the marriage. However, at the conclusion of the final hearing on the alimony issue, the trial court ordered

8

Husband to pay to Wife the sum of $2,200.00 per month as alimony *in futuro*, finding that Husband could moonlight if he wanted to increase his income. We find that, as the trial court did not make a finding that Husband was underemployed, the trial court may not impute any additional income to Husband.

A court must examine all the factors of Tenn. Code Ann. § 36-5-101(d)(1) in determining the proper alimony award. While the real need of the spouse seeking the support is the single most important factor, courts should also consider the ability of the obligor spouse to provide support. Smith v. Smith, 912 S.W.2d 155, 159 (Tenn.App. 1995). *See also* Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn.App. 1989); Lancaster v. Lancaster, 671 S.W.2d 501, 503 (Tenn.App. 1984); Fisher v. Fisher, 648 S.W.2d 244, 246-47 (Tenn. 1983).

In the case at hand, the trial court considered the need of Wife, but showed less concern for Husband's ability to pay. On the first day of trial, the following exchange took place:

| Mr. Halliburton: | . . . that's what we've been trying to say all along, that there's a certain amount of money, that both two people and two children are going to have to live on this money. |
| --- | --- |
| The Court: | They'll have to have their moneys (sic) available to them first, of course, and then however Dr. Goodman will manage to live on what is remaining, will, of course, be up to Dr. Goodman. |
| Mr. Halliburton: | . . . we've got to leave enough for him to live on. He can't operate to produce the 55 is what it amounts to. I mean . . . |
| The Court: | Well, unequivocally they have to - - their needs must be first met. |

Wife is completely dependent on the monthly alimony and child support payments from Husband to meet her monthly expenses. Wife testified at the divorce hearing that her monthly expenses would be $5,110.00, inclusive of housing and rental insurance. Wife has been awarded the sum of $4,000.00 as alimony and child support from Husband, reflecting

9

a shortfall of $1,110.00. However, while Wife may have a legitimate need for this payment of alimony, there has been no showing that Husband has the ability to pay such a large sum without borrowing funds or working additional hours.

Wife contends that her economic position following the divorce should not be worse than her economic position while she was married. This Court addressed a similar situation in the case of Shadoin v. Shadoin, 1986 WL 8975, (Tenn.App. 1986), stating as follows:

> While this Court has recognized the principle that a divorce should not inflict undue economic hardship upon an innocent spouse, we have never held that this principle should override the other factors traditionally considered by the courts. Thus, we hold that the application of this principle must be tempered by the other factors contained in Tenn. Code Ann. § 36-5-101(d). It would be inappropriate for a trial court to attempt to maintain the pre-divorce financial condition of the innocent spouse by requiring periodic payments of support and maintenance that are beyond the obligor spouse's ability to pay.

1986 WL 8975, *3

The combined amount of alimony, child support payments, children's extra-curricular activities, and children's uninsured medical expenses, when taken together with Husband's monthly living expenses, exceed his annual, before-tax income. This burden is too great. Husband receives the sum of $5,414.39 net income per month. Husband's contends that his monthly support obligation to Wife and children totals $4,852.00 ($1,800.00 child support, $2,200.00 alimony, $200.00 average children's monthly extra-curricular activities, $652.00 average children's monthly uninsured medical expenses).

Our examination of the record shows that Husband calculated his "average children's monthly uninsured medical expenses" by totaling the uninsured medical expenses of the children over a nine month period and dividing the total by nine. However, we notice that at least $4,000.00 of the uninsured medical expenses for the nine month period were for braces (orthodontic) for one of Husband's children. While we appreciate the fact that Husband did pay that expense during this period of time, such expense is

10

generally a one-time event and should not be used to project Husband's average monthly expense for uninsured medical costs. Without the expense of braces, the children's average uninsured medical expense amounts to $235.00 per month rather than $652.00 per month. Additionally, based upon the figures in the record, we calculate the expense of "average children's monthly extra-curricular activities" to be $183.00 rather than $200.00.

Excluding alimony, Husband pays the average monthly sum of $2235.00 to Wife. This leaves Husband with approximately $3,179.00 in disposable income per month. With the trial court's award of $2,200.00 alimony, Husband pays approximately $4,435.00 per month for the support of his Wife and children and is left with only $979.00 per month on which to live. We therefore modify the trial court's award of alimony *in futuro* by reducing Husband's monthly obligation from $2,200 to $1,000.00. At this reduced amount, Husband pays approximately $3,235.00 per month in support and retains the sum of $2,179.00 per month, or somewhat less than 50% of his disposable income.

We recognize that this amount is less than Wife's claimed monthly expenses and that, as a result of this decree, Wife may be required to adjust her standard of living. However, both Husband and Wife testified that the parties were living beyond their means prior to their separation. With no finding that Husband is underemployed, we cannot require Husband to work extra hours nor can we require Husband to borrow monies from his parents in order to allow Wife to continue to live at the standard at which she grew accustomed during the marriage.

We find that although Wife may have a legitimate need for alimony in the amount of $2,200.00, Husband is currently unable to pay such sum. The trial court exceeded its discretion in setting alimony in the amount of $2,200.00 without a finding that Husband was underemployed. Accordingly, the trial court's award of alimony *in futuro* shall be modified from $2,200.00 to $1,000.00 per month.

**C. Award of Alimony *in Solido***

11

Husband contends that the trial court erred in awarding Wife alimony *in solido* in the amount of $16,961.25 for Wife's attorney fees. Husband asserts that he lacks the property or assets with which to pay such an award. Husband contends that the trial court could have only awarded alimony *in solido* based upon Husband's expected future earnings.

We do not find evidence in the record to show that Husband had any substantial bank accounts, real property, or current assets or any estate from which to pay alimony *in solido*. Alimony *in solido* should be awarded generally only out of a spouse's estate. Houghland v. Houghland, 844 S.W.2d 619, 622 (Tenn.App.1992). Alimony *in solido* should not be awarded out of an expectation of future earnings. Aleshire v. Aleshire, 642 S.W.2d 729, 733 (Tenn.App. 1981).

Wife contends that since Husband has already paid the attorney's fees, the trial court did not err in finding Husband had the ability to pay said amount. However, there is no proof in the record that Husband paid the alimony *in solido* out of his own estate. There is proof in the record that Husband's mother made the sum of $200,000.00 available to Husband on an as needed basis. Husband testified that he must repay any with interest any money borrowed from his parents. At the time of trial, Husband had borrowed approximately $68,000.00 against this note. It is entirely possible that Husband paid the alimony *in solido* with borrowed funds. Husband's payment of the alimony *in solido* is not sufficient proof that Husband had the ability to pay such funds.

Wife argues that Husband's bank account reflected a balance of over $9,000.00 during the months when he stated he had no monies or was left without any money after he paid the child support and alimony. Husband filed an affidavit in which he testified that said balance included funds which Husband borrowed and did not reflect certain checks which had not yet cleared the bank.

Where the trial judge has seen and heard witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must

be accorded those circumstances on review. Collins v. Howmet Corp., 970 S.W.2d 941, 943 (Tenn. 1998); Humphrey v. David Witherspoon, 734 S.W.2d 315 (Tenn. 1991). The trial court heard testimony from both Husband and Wife and had the opportunity to observe their demeanor throughout the proceedings. It is possible that the trial court discredited Husband's testimony as to his $9,000.00 checking account balance.

The checking account is the only evidence in the record of any assets or any estate out of which Husband could be ordered to pay alimony *in solido*. Without evidence in the record that Husband possessed sufficient assets to pay the $16,961.25 alimony *in solido*, the trial court could have only awarded alimony *in solido* based upon Husband's expected future earnings. As stated in Aleshire, alimony *in solido* should not be awarded out of an expectation of future earnings absent extreme circumstances which do not exist here. The trial court erred in awarding alimony *in solido* in excess of $9,000.00. Accordingly, the trial court's award of alimony *in solido* shall be modified from $16,961.25 to $9,000.00.

### III. Credit Card Debt

Husband finally contends that the trial court erred in ordering Husband to pay credit card debt in the amount of approximately $22,000.00. There was no dispute at trial that Wife incurred the credit card debt following the parties' separation. Husband testified he was unaware of the debt until Wife showed him a bill for $18,000.00. Husband testified that he believed the $18,000.00 bill included the purchase of a new computer and printer (although the parties owned a functioning computer and printer), a go-cart, and an above-the-ground pool.

Wife admitted that all of the aforementioned charges were incurred after the parties separated in July 1995. Wife argues that after Husband filed for divorce, Husband closed the bank accounts and denied Wife access to any credit cards. After Wife filed a motion for *pendente lite* support, Husband began paying child support of $1,450.00 per month and alimony of $2,000.00. Wife asserts she was able to pay for some of the children's clothing,

13

school supplies, and extracurricular activities from the funds she received from Husband. However, after the *pendente lite* hearing Wife noticed that the paternal grandparents stopped buying the children entire fall and spring wardrobes, stopped paying for summer camps, ballet, basketball, and other extracurricular activities. Wife asserts she therefore had to charge these expenses on her credit cards. Wife contends that the majority of the charges were for clothing for the children.

Trial courts have broad discretion in dividing the marital estate. Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983). Harrington v. Harrington, 798 S.W.2d 244, 245 (Tenn.App. 1990). Therefore, we give their decisions great weight, Edwards v. Edwards, 501 S.W.2d 283, 288 (Tenn.App. 1973), and are disinclined to interfere unless the evidence preponderates otherwise or the decision is based on an error of law. Mondelli v. Howard, 780 S.W.2d 769, 772 (Tenn.App. 1989).

Like marital property, marital debts should be divided equitably, taking into consideration: (1) which party incurred the debt, (2) the purpose of the debt, (3) which party benefitted from incurring the debt, and (4) which party is better able to repay the debt. Mondelli v. Howard, 780 S.W.2d at 773. In the case of debt incurred between the separation and divorce, one spouse should not be held responsible for the debts the other spouse incurs unless the debts were for a marital purpose or for the joint benefit of the parties. Mondelli v. Howard, 780 S.W.2d at 773; Richards. v. Richards, No. 01-A-01-9005-CV00164, 1991 WL 66443 (Tenn.App. 1991).

Wife contends that the debt was incurred for a marital purpose or for the joint benefit of the parties in that the debt was incurred for the children's expenses. Husband argues that during the fifteen month period in which the debt was incurred, Husband was paying to Wife $1,625.00 per month as support and was paying all of the bills of Wife and the children at an additional cost of approximately $3,500.00 to $4,000.00 per month. Husband contends said sum was more than sufficient to meet the necessities of Wife and the children. Husband argues that Wife should not be rewarded for her extravagant spending

14

and fiscal irresponsibility, even if she incurred the debt to indulge the children with luxuries.

In the final decree of divorce, the trial court order Husband to assume the debts of the parties, finding that the Wife did not have the present ability to pay the parties' debts and Husband was in a better position to assume the debt. However, the $22,000.00 credit card debt of Wife was incurred post separation and the trial court made no finding that such debt was incurred for a marital purpose or for joint benefit of the parties.

Exhibit 14 was introduced at trial as a chart or graph prepared by Wife of each of her credit cards, the amount of credit charged to them on each given month, and a running total of Wife's credit card debt. Upon a careful examination of this exhibit, this Court finds that while some of the expenses were for clothing for the children, over $4,000.00 was spent on television, entertainment, and a video camera. There are entries for tires, swimming pool pump, over $3,500.00 in car repair, brakes and miscellaneous, over $2,000.00 for a computer, and numerous entries for food and miscellaneous. Husband admitted that a new computer, new pool, and go-carts benefitted the children, but also pointed out that the old computer was in working condition and did not need to be replaced. Wife did not refute that such purchases were made on credit.

Wife was receiving $1,625.00 per month in child support during the time the majority of these bills were incurred. While this Court cannot say if the children's expenses exceeded $1,625.00 per month, the monthly sum of $1,625.00 should have been sufficient to cover a good portion of the children's needs. We find that while many of the credit card expenses were incurred on behalf of the children, the expenditures also reflect miscellaneous expenses of Wife. We would also agree with Husband that some of the expenditures reflect unnecessary extravagance.

For all of the foregoing reasons, we find that the evidence preponderates against the decision of the trial court ordering Husband to pay the entire $22,000.00 credit card debt of Wife. Taking into consideration that a fair portion of the debt was for the benefit of

the children, a fairer allocation of the credit card debt would be for the Husband to pay $15,000.00 of the debt and the Wife to pay the remaining $7,000.00. Therefore, the portion of the final decree of divorce which ordered Husband to pay the credit card debts incurred by Wife in the amount of $22,000.00 shall be modified from $22,000.00 to $15,000.00.

We therefore modify the final decree of divorce to provide that Husband shall be solely responsible for the payment of the sum of $15,000.00 of the credit card debt incurred by Wife, and Wife shall be responsible for the payment of the balance of the credit card debt (approximately $7,000.00).

## IV. Conclusion

The judgment of the trial court is hereby affirmed as modified. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

16