IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2001 Session

## WILLIAM JOSEPH WILSON v. PATRICIA JEAN WILSON

**An Appeal from the Circuit Court for Shelby County**
**No. 159194-9 R.D.      Robert L. Childers, Judge**

---

### No. W2000-01384-COA-R3-CV - Filed January 10, 2002

---

This is a divorce case in which alimony is in dispute. At trial, the parties stipulated to the grounds for divorce, and the issue of fault was not considered. The trial court awarded the wife alimony *in solido* of $750 per month until she reached the age of sixty, and specified that it was non-modifiable upon the wife's death or remarriage. The husband appeals. On appeal, we affirm the trial court's decision awarding the wife alimony *in solido*, and modify the amount to $500 per month until she reaches the age of sixty.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Michael L. Robb, Memphis, Tennessee, for the appellant, William Joseph Wilson.

Mitchell D. Moskovitz, Adam N. Cohen, Memphis, Tennessee, for the appellee, Patricia Jean Wilson.

### OPINION

This is a divorce case in which alimony is in dispute. In this case, Plaintiff/Appellant William Joseph Wilson ("Husband") and Defendant/Appellee Patricia Jean Wilson ("Wife") were married in June 1978, and were separated in February 1998. Husband filed a complaint for divorce in May 1998. During the marriage, Husband and Wife had two daughters, both of whom had reached majority by the time the divorce was granted. At the time of divorce, Husband was forty-nine years of age, and Wife was forty-five.

Before trial, the parties stipulated as to the grounds for divorce pursuant to Tennessee Code Annotated § 36-4-129 (Supp. 2000). On January 10, 2000, a one-day bench trial was held on the issues of property division, alimony, and attorney's fees. The parties agreed, for the purposes of alimony, that they were equally at fault for the demise of the marriage.

At trial, Husband testified that when he and Wife were married, he had a Bachelor's degree and a Master's degree from the University of Memphis. Before the marriage, Husband worked as a teacher, but soon after the marriage, he took a position with Federal Express. During the marriage, Husband worked in a variety of positions at Federal Express, culminating in his job at the time of trial as manager of technical training. At the time of trial, Husband supervised approximately twenty employees, working approximately forty-eight hours per week. Husband testified that he anticipated that, in January 2000, his base salary would rise to $6,950 per month, or $83,400 per year. This figure did not include yearly bonuses which, although not guaranteed, are sometimes substantial. Husband testified that his bonus income in 1999 totaled $17,000, but in the past his bonuses usually totaled $6,000 or $9,000 per year.

Husband testified that he was paying money toward his older daughter's college and living expenses that were not covered by her scholarship. He testified that he planned to continue paying money toward her expenses, and that he planned to pay for all of his younger daughter's college expenses when she began college in August 2000. He stated that he planned to pay child support to Wife for their younger daughter until she graduated from high school in May 2000. Husband said that he paid $408 per month for both of his daughters' car notes. He also paid for their car insurance at a cost of $350 per month, and paid for medical insurance and various other health care costs. He said that he would continue to make these payments once the divorce was final.

At the close of Husband's proof, counsel for Husband read from a portion of Wife's deposition in which she stated she would not need Husband's financial support once the divorce was final.

At trial, Wife testified that she had a Bachelor's degree in dental hygiene, and that at the time of trial she was working as a dental hygienist three and a half days per week for a total of thirty-two hours. She was paid on a commission basis, receiving forty percent of the billed services she performed. She stated that her income over the past few years had ranged from approximately $44,000 to $50,000, and that this was considerably more than the average dental hygienist in Shelby County earns. Wife grossed an average of approximately $4,000 per month from 1996-1999, netting an average of $3,155 per month. Wife testified that she had expenses of $4,665 per month, leaving a shortfall of $1,510 per month.

Wife stated that both daughters plan to live primarily with her for the next few years while they are in college, but otherwise, she does not plan to pay for any significant part of their college educations. Wife requested that the trial court award her $1,250 per month in alimony *in futuro* until she reaches the age of sixty.

Wife proffered the testimony of Beth Horn, an associate professor at the University of Tennessee Dental School in Memphis. Horn testified that a thirty-two hour work week is considered full-time for a dental hygienist, due to the threat of repetitive strain injuries. She stated that the average salary for a dental hygienist in Shelby County was $37,000. Dr. Edward J. Wiener, the dentist for whom Wife worked, testified that he paid Wife and his other hygienists a higher salary than average because he expected them to remain flexible in their scheduling hours, and that he did not permit his hygienists to take other jobs on their days off.

At the conclusion of the evidence, the trial judge entered an order granting the divorce. In addition, the trial court awarded the parties joint custody of their younger daughter, with Wife being the primary residential custodian, and ordered Husband to pay child support for the younger daughter until her high school graduation. The trial court ordered that the marital home be sold, with 55% of the proceeds going to Wife, 45% to Husband, and divided the remaining marital estate. All together, the trial court awarded approximately $248,000 in assets to Wife, and $227,000 in assets to Husband.[1] With respect to alimony, the trial court found that Wife was not in need of rehabilitation, but noted that Husband had a greater earning capacity than Wife. Therefore, the trial judge stated that Wife was entitled to "closing in" alimony of $750 per month until she reaches the age of sixty. The trial judge specified in oral remarks from the bench, as well as in his written order, that the award of $750 per month was alimony *in solido*, and thus nonmodifiable. In a later hearing on a motion to alter or amend filed by Husband, the trial judge stated that he viewed the award of alimony *in solido* more as a property division rather than spousal support, because Wife was not in need of rehabilitation or spousal support. The trial court denied Husband's motion to alter or amend. Husband now appeals.

On appeal, Husband argues that the trial court's award of $750 per month in alimony *in solido* is not warranted under the circumstances of this case, in which Wife has a steady, stable job earning approximately $50,000 per year, and received more than fifty percent of the marital assets. Whether the $750 per month is viewed as "closing in" money under *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995), or whether it is viewed as a property division, Husband contends that the circumstances of this case do not warrant such an award.

An appeal from a bench trial is reviewed *de novo*, with a presumption of correctness in the factual findings of the trial judge. Tenn. R. App. P. 13(d). Questions of law are reviewed *de novo* with no presumption of correctness. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996).

Regarding spousal support, the trial court has broad discretion in deciding whether spousal support is needed and, if so, its nature, amount, and duration. *Fraysier v. Fraysier*, No. E2000-02485-COA-R3-CV, 2001 WL 194351, at *3 (Tenn. Ct. App. Feb. 27, 2001) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748

---

[1] The largest assets in the marital estate were the equity in the marital home, valued at $168,670, which the trial court divided 55% to Wife, 45% to Husband, and the value of Husband's defined benefit/pension plan with Federal Express, valued at $186,905, which the trial court divided equally.

(Tenn. Ct. App. 1996)). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." **Kinard**, 986 S.W.2d at 234.

For the division of marital property, although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. **Bookout v. Bookout**, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. **Id.** A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. **Ford v. Ford**, 952 S.W.2d 824, 825-826 (Tenn. Ct. App. 1996).

We must first determine whether the trial court's award of $750 per month to Wife is property division or spousal support. When the trial court's ruling was originally announced, the trial judge stated that Wife needed money to "catch up" or "close in" toward her economic position pre-divorce. However, at a later hearing on a motion to alter or amend, the trial judge clarified that the alimony was intended as property division. Under these circumstances, the award must be treated as an award of alimony *in solido*, i.e. as property division.

In making a division of marital property, the trial court considers the following factors:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c)(1) through (11)(Supp. 2000). In this case, the parties had been married for twenty-two years, and each had little separate property outside of the marital estate. The largest assets in the marital estate were the equity in the marital home, which the trial court awarded 55% to Wife, 45% to Husband, and Husband's pension plan with Federal Express, which the trial court split equally. The trial court noted that there was disparity in the parties' earning capacity, that Husband has a greater earning capacity, and stated that it had considered the fact that Husband has "a greater ability to acquire future capital assets and income. . . ." The trial court observed that Wife had contributed to Husband's increased earning capacity by working part-time and raising the children and functioning as a homemaker. The trial court made the following remarks concerning the division of marital property:

> An equitable division of martial assets, of course, and the case law is clear, is not always equal. And this wasn't an equal division because the parties weren't on equal positions. And I tried my best to adjust the marital estate and make it equitable. Not equal, but equitable.
>
> . . . There weren't a lot of liquid assets, and I didn't think it was fair or equitable to make [Husband] liquidate some of his share of the assets to make this payment to balance the equities. So I did it through alimony *in solido*.

Husband argues that the amount of alimony *in solido* awarded is such that it requires Husband to pay it out of future earnings. ***Goodman v. Goodman***, 8 S.W.3d 289, 297 (Tenn. Ct. App. 1999). Wife notes that the division of marital property resulted in Husband receiving approximately $84,000 in cash, from the parties' bank account and the sale of the marital home.

Under the circumstances of this case, an award of alimony *in solido* is warranted, for the reasons noted by the trial court in its ruling. However, the amount of alimony *in solido* awarded will force Husband to pay from his future earnings. ***See Goodman***, 8 S.W.3d at 297. Considering all of the circumstances in this case, including the factors noted by the trial court and the amount of cash Husband received in the division of property, we modify the award of alimony *in solido* to $500.00

per month, payable until Wife reaches age 60. In all other respects, the decision of the trial court is affirmed. Wife's request for attorney's fees and expenses on appeal is denied.

The decision of the trial court is affirmed as modified, as set forth above. The cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed equally to the Appellant, William Joseph Wilson, and his surety, and Appellee, Patricia Jean Wilson, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE