IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 9, 2001

## ALBERTA STEWART DODSON v. JAMES ROBERT DODSON

**Appeal from the Circuit Court for Davidson County**
**No. 98D-313     Muriel Robinson, Judge**

---

**No. M2000-01682-COA-R3-CV Filed May 10, 2002**

---

The trial court awarded a divorce to the parties, and ordered the husband to pay $1,000 per month as alimony in futuro. In light of the needs of the wife, and of the husband's ability to pay, we increase the alimony award to $1,500 per month.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

D. Scott Parsley, Nashville, Tennessee, for the appellant Alberta Stewart Dodson.

**OPINION**

### I. MARRIAGE AND DIVORCE

James and Alberta Dodson married in 1963. Their marriage produced six children, all of whom were fully grown at the time of the proceedings discussed below. Although she worked part-time in a fabric store for a few years, Ms. Dodson mainly stayed at home raising the children. Mr. Dodson was always the primary breadwinner. He worked at the Dupont plant for 34 years, and earned many raises during his career.

The parties experienced growing disagreement, and Mr. Dodson moved out of the couple's bedroom sometime in the mid 90's, but stayed in the marital home. On January 30, 1998, Ms. Dodson filed a Complaint for Divorce from Bed and Board. As grounds, she listed "Irreconcilable Differences and/or Inappropriate Marital Conduct." In his Answer and Counter-Complaint, Mr. Dodson denied that he was guilty of inappropriate marital conduct, and claimed that the wife herself was guilty of such conduct. He also admitted there were irreconcilable differences between the parties, and asked the court to grant him an absolute divorce.

Shortly thereafter, the parties decided that it would be in their best interest to reconcile, and the court complied with their request for an Order of Reconciliation, suspending all the divorce proceedings without prejudice to either party. Unfortunately, they did not manage to iron out their differences, and at their request the court set aside the Order of Reconciliation on May 28, 1999.

The hearing of the case was conducted on April 19, 2000. The parties were the only witnesses to testify. The transcript of the hearing revealed very little anger or bitterness between them. Their only real dispute involved whether the marital home needed certain repairs, and who should pay for the repairs. The parties agreed that Ms. Dodson should keep the marital home (worth about $79,000) as her residence after the divorce, and that the husband could keep his Dupont Savings and Investment Plan (also worth about $79,000).

At the conclusion of the hearing, the trial court awarded the divorce to both parties pursuant to Tenn. Code. Ann. § 36-4-129. The parties had by that time reached agreement on the home repairs, and the court ratified their agreement, and divided the marital property largely in accordance with their wishes.

The court also ordered the husband to pay long-term support to the wife. Ms. Dodson was awarded alimony in futuro of $1,000 per month until her death or remarriage, with an additional provision (in accordance with the parties' agreement) that when the husband retired from Dupont, alimony would cease, and the wife would receive one-half of his pension. A Qualified Domestic Relations Order was executed to protect the wife's pension rights. The court also awarded the wife $750 towards her attorney fees. She appealed, contesting the amount awarded to her as alimony and attorney fees.

## II. ALIMONY

In her brief on appeal, Ms. Dodson argued that the alimony ordered by the trial court was insufficient to meet her monthly expenses. Mr. Dodson did not file a responsive brief, and we accordingly must decide this case solely on the record and on the appellant's brief. *See* Tenn. R. App. P. 29(c).

### A.

The proof showed that the parties were married 37 years, and that there is a huge disparity between their earning capacities. Ms. Dodson worked part-time outside the home for a few years, and never earned much more than minimum wage. She suffers from impaired vision, and has undergone neck and knee surgery. It is undisputed that she is totally disabled, and that her only source of income aside from alimony is her social security disability check of $618 per month.

Mr. Dodson has worked for Dupont for 34 years, and has earned ever-increasing compensation. The record contains W-2 forms for the years 1993-1999, which show his gross annual income increasing from $65,000 in 1993 to $89,000 in 1999. His average net monthly take home pay in 1999 was $5,410. Mr. Dodson is sixty years old, and because of his years of service

he can retire at any time, but he will receive his maximum pension of about $3,000 monthly if he can stay on the job until he reaches sixty-five. He testified that "over-half" of his income results from overtime work, and that there is no guarantee that the same level of overtime will continue. His health may also affect his ability to work overtime. He is diabetic, and suffers from high blood pressure.

Both parties submitted income and expense statements just prior to the hearing. Ms. Dodson's statement listed her sole income as a $618 disability check, and total monthly expenses of $3,477, resulting in a monthly deficit of $2,859. Mr. Dodson's statement listed his net monthly income as $3,845, presumably his base pay without overtime, and monthly expenses of $3,096, giving him a monthly surplus of $749.

We note that the expenses listed in Ms. Dodson's statement included an entry for "Rent/Mortgage" of $765. She testified that this item was on the list because she did not know if the court would award the house to her. Since it did, and the house is unencumbered, she does not have to worry about that expense. Interestingly, both parties have included generous donations to their church in their monthly expenses, $460 for the wife and $480 for the husband. Both parties also included additional entries of $160 each for gifts, presumably for their children or grandchildren.

The other major expenses of the parties (food, clothing, utilities, car operation) are roughly comparable. The main difference between their financial needs is that Mr. Dodson will have to pay rent when he moves out of the marital home (which he estimates will cost about $800 per month), and Ms. Dodson has greater expenses for medical, dental, eyecare and pharmacy prescriptions than her husband ($323 monthly versus $56 monthly).

**B.**

The legislature has set out a list of factors for the courts to take into account when determining an appropriate amount of spousal support. Tenn. Code. Ann. § 36-5-101. Some of the most relevant factors for the purposes of this appeal are the duration of the marriage, the age and physical condition of each party, their relative earning capacity, the provisions made in regard to the marital property, and the tangible and intangible contributions each party has made to the marriage. Many of our cases have also stated that the most important factors to consider are the needs of the obligee and the obligor's ability to pay. *Goodman v. Goodman,* 8 S.W.3d 289 (Tenn. Ct. App. 1999); *Smith v. Smith*, 912 S.W.2d 155 (Tenn. Ct. App.1995); *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn. Ct. App. 1989).

In light of all these considerations, the most equitable support award in this case would be one that leaves the parties in a roughly equal financial position. It appears to us that the parties themselves have taken this view, since they have agreed to an equal division of the pension that Mr. Dodson will eventually receive.

While Ms. Dodson overstated expenses in regard to housing, it seems clear that alimony of $1,000 a month, even when combined with her disability check, will not be sufficient for her to meet her needs, and will leave her in worse financial condition than her husband. At the same time, it appears that Mr. Dodson has understated his possible income, and thus that he may wind up with a greater surplus after paying his expenses than his statement indicates. He also has a substantial cash cushion, because of his retention of the Dupont Savings and Investment Plan.

We believe that alimony in futuro of $1,500 per month would bring Ms. Dodson's income up to the level she needs, while not reducing Mr. Dodson's income below the level of his needs. We thus increase the trial court's alimony award to $1,500 per month until her death or remarriage or until Mr. Dodson's retirement when she will receive one-half of his pension.

## C.

Ms. Dodson also complains that the trial court's award of $750 for attorney fees is inadequate, in light of her attorney's affidavit that he performed services for her that resulted in fees and expenses totaling $3,956.

The award of attorney fees is in the sound discretion of the trial court, and will not be overturned on appeal unless there is abuse of that discretion. *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996). We do not believe that the trial court abused its discretion in awarding Ms. Dodson only part of her attorney fees.

Where it is equitable to do so, however, it is within this court's discretion to award attorney fees on appeal to the prevailing party. *Hoalcraft v. Smithson*, 19 S.W.3d 822 (Tenn. Ct. App. 1999). In light of Ms. Dodson's limited financial resources, and of the burden of the attorney fees she incurred at the trial level, it appears equitable to us that she should be awarded her attorney fees on appeal.

## III.

The judgment of the trial court is modified to increase Ms. Dodson's alimony award to $1,500 per month. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion, including calculation and award of a reasonable attorney's fee for the appeal. Tax the costs on appeal to the appellee, James Robert Dodson.

_____
BEN H. CANTRELL, PRESIDING JUDGE, P.J.