IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2005 Session

## KIM BROWN v. CARLTON BROWN

**Direct Appeal from the Chancery Court for Williamson County**
**No. 29171     Hon. Russ Heldman, Chancellor**

---

**No. M2004-01573-COA-R3-CV - Filed December 14, 2005**

---

In the divorce action, the Trial Court awarded wife a divorce, alimony, child support, and divided marital property and debts of the marriage, and awarded fees for the wife's attorney. The husband's issues on appeal are valuation and division of property, alimony, attorney's fees and amount of child support. We affirm the Trial Court's Judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Gregory D. Smith, and Aminah M. Collick, Nashville, Tennessee, for Appellant.

Jeffrey L. Levy, Nashville, Tennessee, for Appellee.

**OPINION**

In this divorce action, prior to the trial of the divorce issues, the Trial Court Ordered the husband to pay pendente lite child support of $2,242.00 per month, pendente lite alimony of $1,000.00 per month, and to pay the mortgage on the house of $1,638.00 per month. He was also ordered to pay the family's health insurance premium of $414.00 per month. As to wife's Motion for Pendente Lite Attorney Fees, the Court denied the Motion but stated the wife could seek the award of fees at the final hearing.

The Trial Court then bifurcated the trial, such that the business valuation expert

testimony could be heard at a later time, and then scheduled all other issues for trial. The Trial Court adopted the wife's Permanent Parenting Plan, and a trial was held on December 12, 2003, January 23, 2004, and February 4, 2004.

At the conclusion of the trial, the Trial Court entered an Order, finding the wife to be a credible witness and awarded her an absolute divorce on the grounds of adultery and inappropriate marital conduct. The Court found the husband's testimony was "questionable", based on his answers during cross-examination, and the Court ordered the husband to pay child support in the amount of $2,120.00 per month, based on the 2003 "net income". The Court took the remaining issues under advisement, and on April 23, 2004, entered a Memorandum, crediting wife's evidence of valuation of the business at $100,000.00, and stated that the Court did not consider "good will" in arriving at the value.

The Court adopted the wife's valuation of the parties' separate and marital property, and also adopted her proposed division of the property. The Court held the wife would not be able to achieve an earning capacity which permitted a standard of living after the divorce reasonably comparable to that which she enjoyed during the marriage, nor that which would be comparable to the standard of living the husband would be able to achieve. The Court found that there was economic disadvantage to the wife and that rehabilitation was not feasible, and awarded periodic alimony of $2,500.00 per month until her death or remarriage, or until the husband's death. The Court found that due to economic disadvantage, the wife should not have to diminish her funds by paying attorney's fees (since the divorce was solely caused by the husband's misconduct) and awarded wife $35,000.00 in attorney fees.

On appeal, the following issues are presented:

1. Did the trial court err in its valuation and division of property/debts?

2. Did the trial court err in awarding wife alimony when husband has no ability to pay?

3. Did the trial court err in awarding wife attorney's fees?

4. Did the trial court err in its determination of husband's child support obligation?

5. Should wife be awarded her attorney's fees and costs on appeal?

The husband asserts that the Trial Court erred in its valuation of the business and the country club membership. He argues that by setting unreasonably high values on these items, the overall property distribution is skewed in that it appears that husband received a greater share of assets than he actually was awarded.

We have previously explained:

The valuation of a marital asset is a question of fact. It is determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence. On appeal, we presume the trial judge's factual determinations are correct unless the evidence preponderates against them.

*Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). In this case, the Trial Court was presented with differing opinions regarding the value of the business. The wife's expert, Clyde Bright, opined that the business was worth around $100,000.00, while the husband's expert, Gerald LeCroy, opined that the value of the business was $45,000.00. The husband opined that the business had no value.

Both experts testified at length regarding their method of valuing the business. Significantly, both experts tended to agree that the business would be worth around $100,000.00, but LeCroy discounted that amount due to the company's debt and what he characterized as a general undercapitalization of the company. LeCroy also did not account for the $48,000.00 owed to the company by Victor McCauley,[1] a sales rep of the company, because he felt that was inappropriate due to the fact that this money purportedly could not be collected if McCauley left his employment. Bright, on the other hand, counted McCauley's debt to the company as a receivable, and also did not discount the company for being undercapitalized, because he stated that there was no reason to do so. The Trial Court credited Bright's valuation, and placed a value on the business that was within the range of evidence submitted. The evidence does not preponderate against the Trial Court's finding that the value of the husband's interest in the company was $100,000.00, not including professional or personal goodwill. Tenn. R. App. P. 13(d).

The husband further argues the Trial Court's valuation of the business was in error, because the Court did not discount same for husband's personal goodwill. The Trial Court specifically stated that its value did not include personal goodwill. Moreover, neither expert testified regarding what the exact value of the husband's personal goodwill would be, vis a vis the goodwill of the business. Bright testified he felt the business could be run without the husband, because the husband acted mainly as a sales rep, and McCauley was performing the same job. Bright also testified, however, that a lot of the income of the business was tied to the husband's efforts. LeCroy testified the husband was very "hands-on" and involved, and that it would be hard to separate the husband's goodwill from that of the business. LeCroy also admitted that he did not know what percentage of sales was attributable to husband's efforts versus McCauley's. Neither expert placed a value on the goodwill attributable to husband personally. Therefore, the evidence presented does not preponderate against the Trial Court's finding as to value. Tenn. R. App. P. 13(d).

Further, the husband claims that the Trial Court's value of the country club

---

[1]The husband testified that McCauley owed the husband $48,000.00 at the time of trial.

membership was unnecessarily high. Both parties testified that a membership would sell for $16,000.00. The husband then testified, however, that this value would have to be discounted for a 25% transfer fee and some other types of assessments, but did not explain or present any other proof regarding these alleged "discounts" to the value. The Court accepted both parties' testimony that a membership would sell for $16,000.00, and the evidence does not preponderate against this finding. Tenn. R. App. P. 13(d). The Court specifically found the wife to be a more credible witness than the husband, and "[w]hen a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn.1999).

Having found the values found by the Trial Court to be correct, we are now required to look to the overall distribution to determine if it is equitable. We have often noted that an equitable division does not necessarily have to be an equal division. *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn. Ct. App. 1991). Further, "Appellate review of a division of marital property is de novo upon the record with a presumption of the correctness of the trial court's findings of fact. Trial courts have wide discretion in the manner in which marital property is divided, and their decisions are accorded great weight on appeal." *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997).

We defer to the Trial Court's division of marital property unless it is inconsistent with the statutory factors set forth in Tenn. Code Ann. §36-4-121(c), or is not supported by the evidence. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998). We conclude the Trial Court made an equitable division of the parties' marital property. This was a marriage of long duration, and each party's age and health status was similar. (The wife was 47 and the husband 45 at the time of trial). The wife, however, had a much smaller earning capacity due to the fact that she had not worked (except doing general bookkeeping for the parties' business) outside the home in almost 20 years. She testified she had not kept up with the current standards in her profession, and had very few computer skills.[2] The husband had a consistent income of over $100,000.00 per year from his business for the last several years, and the wife had been the primary caretaker of the children throughout their lives, and had stayed home with them from the time they were born.

Neither party contributed to the other's education, but the wife contributed to the husband's earning capacity in the business by taking care of things at home and helping out with the business bookkeeping. Both parties contributed to the marital estate, and neither party had a significant separate estate, either at the time of the marriage or presently. The wife demonstrated her financial needs because of her lack of income and her need to provide housing, clothing and food for herself and the children. The wife had little social security history, and based upon the statutory factors, it would appear the Trial Court's award of 72% of the marital estate was not inequitable.

---

[2]The wife testified that when she married, she was working for the State in the Department of Tourists and Development, and her salary there was approximately $23,000.00. She testified that she had obtained an accounting degree in 1979 but was not a CPA.

We note that the biggest cause of the discrepancy in the division was actually the distribution of debt. When looking at the assets only, the wife received property worth approximately $107,000.00, and the husband received property worth approximately $135,000.00. The wife was ordered to pay debts of $7,500.00, however, the husband was ordered to pay indebtedness of approximately $96,000.00. This Court has previously instructed that when distributing marital debt, the Court should consider the following factors:

(1) which party incurred the debt and the debt's purpose,

(2) which party benefitted from incurring the debt, and

(3) which party is best able to assume and repay the debt.

*Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989).

The evidence established both parties incurred and benefitted from the debt, but the husband had a greater responsibility, because of his greater tendency to live outside the parties' realistic means, taking lots of trips, having expensive hobbies such as golf, and insisting on the country club membership, which he admitted the wife was against because she thought they could not afford it. Most significantly, the proof established the husband was the party best able to assume and repay the debt, based on his significantly higher earning capacity, and the income potential of his business. We therefore affirm the Trial Court's valuation and distribution of the parties' marital estate.

Next, the husband asserts the Trial Court erred in ordering him to pay alimony to the wife, because he does not have the ability after paying the indebtedness assessed to him. We have previously stated:

Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. The need of the recipient spouse, followed by the obligor's ability to pay, are the primary considerations in the determination of an award of alimony. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App.1984); *Goodman v. Goodman*, 8 S.W.3d 289, 295 (Tenn. Ct. App.1999). In making its determination of an alimony award, the court must balance several statutory factors including those enumerated in section 36-5-101(d)(1) of the Tennessee Code.

The trial court has broad discretion in determining the type, amount, and duration of alimony based upon the particular facts of each case. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App.1998). The amount of alimony is largely within the discretion of the trial court. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). This Court is not inclined to alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

*Sullivan v. Sullivan*, 107 S.W.3d 507, 511 (Tenn. Ct. App. 2002).

The parties agree that it would be error for the Court to have ordered the husband to pay alimony that was beyond his ability, but they disagree whether such was the case. The wife argues the husband will have at least $3,000.00 left after paying his child support and alimony, but he insists that he will have a monthly shortfall after payment of these obligations and necessary payments toward the indebtedness assessed against him by the Trial Court.

The husband argues the Trial Court erred in finding his annual income level to be $121,000.00, as opposed to $109,000.00. The evidence established that the husband's income had met or exceeded $121,000.00 for the last several years. The husband admitted that in 2003, this was his income level, but then stated that the $11,000.00 business loss should be deducted. Accepting the husband's testimony as to the $11,000.00 loss, the husband still drew $121,000.00 from the business as income. The evidence does not preponderate against the Trial Court's finding with regard to the husband's income. Tenn. R. App. P. 13(d).

The husband then asserts that after paying his court-ordered support obligations, he would be left with approximately $1,500.00 per month with which to pay his personal living expenses. He did not provide a breakdown of the items he claimed he would have to pay, aside from the child support and alimony. He did present proof regarding the minimum payments on credit cards, but did not present proof regarding what amount he would have to pay per month toward his tax arrearage, insurance obligations, or other expenses he was claiming. The husband presented the Trial Court with a statement of his income and expenses, but then testified that many of these expenses were speculative, due to the fact that he was living with his girlfriend most of the time, and thus had incurred no actual expenses for rent or mortgage, utilities, phone, etc.

The husband was questioned regarding his spending habits during the parties' separation, and admitted that he was still taking trips, golfing, hunting, eating out three meals per day, paying the country club membership, etc. The husband failed to produce convincing proof regarding his actual expenses, and therefore was unable to demonstrate that he was unable to pay the alimony awarded. However, the wife did demonstrate her need for the alimony, as shown by her testimony and her statement of income and expenses.

We have previously said:

We review matters of alimony under an abuse of discretion standard. If the discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. We review the trial court's discretionary decisions to determine: (1) whether the decisions are supported by the facts in evidence; (2) whether the trial court identified and applied the applicable legal principles; (3) whether the trial court's decisions are within the range of acceptable alternatives.

*Sullivan*, at 510.

The Trial Court's decision is supported by evidence. Tenn. R. App. P. 13(d).

The husband argues the Trial Court erred in ordering him to pay a portion of the wife's attorney's fees. An award of attorney's fees in a divorce case is treated as an award of alimony, and is reviewed under an abuse of discretion standard. *Kinard*. We have previously stated that "[o]n appeal this Court will not interfere with the trial court's decision awarding attorney fees except where there is a clear showing that the trial court reached the wrong conclusion, with a result that manifest injustice would be done if the award is allowed to stand." *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997). An award of fees is proper when "one spouse is disadvantaged and does not have sufficient resources with which to pay those fees." *Sullivan*.

In this case, the Trial Court was presented with evidence regarding the outstanding fees owed to the attorneys and made a determination as to what was a reasonable fee, and considered the wife's need and inability to pay the fees and the husband's fault, etc., all of which were proper considerations. The evidence demonstrated the husband had greater ability to accumulate and replace assets than the wife, and if the wife was made to pay her entire amount of fees, it would deplete the small amount of liquid or semi-liquid assets she received. The record does not establish an abuse of discretion by the Trial Court in making this fee award, and the award of fees is affirmed.

As to the child support obligation, the husband simply argues the Trial Court used the wrong number for his income, by including "borrowed money", i.e. because the company had to take on debt in the same year that the husband received $121,000.00 in income (due to the company's $11,000.00 loss for the year). However, in fact, the husband actually received $121,000.00 in income from the company, regardless of how the company went about establishing his income. There is nothing in the guidelines to suggest that an obligor's actual income received should be reduced because the company which he owns/works for had to incur debt. We find this argument without merit.

While the wife argues that she should receive an award of additional fees on appeal, because the appeal is frivolous and because she is the prevailing party, we conclude the wife has already received a substantial fee award, and that an award of additional fees may well be excessive. Moreover, this appeal is not so devoid of merit that sanctions are called for pursuant to Tenn. Code Ann. §27-1-122. In our discretion, we decline to award the wife additional attorney's fees.

We affirm the judgment of the Trial Court and remand, with the cost of the appeal assessed to Carlton Brown.

_____
HERSCHEL PICKENS FRANKS, P.J.