IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 11, 2002 Session

## PATRICIA PAULETTE FULGHUM GRICE v. LARRY RANDOLPH GRICE

**Direct Appeal from the Chancery Court for Humphreys County**
**No. 27-016; The Honorable Leonard W. Martin, Chancellor**

_____

**No. M2001-02105-COA-R3-CV - Filed November 20, 2002**

_____

This appeal arises from a divorce proceeding initiated by the wife. The trial court, holding that both parties contributed to the demise of the marriage, granted the parties a divorce. The trial court then granted the wife rehabilitative alimony for a period of eighteen months, as well as alimony *in solido*, but denied the wife's request for alimony *in futuro*. The primary issue on appeal is whether the trial court erred in granting the wife rehabilitative alimony as opposed to alimony *in futuro*. For the following reasons, we affirm, as modified.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

G. Sumner R. Bouldin, Jr., Murfreesboro, TN, for Appellant

Clifford K. McGown, Jr., Waverly, TN, for Appellee

**OPINION**

### I. Facts and Procedural History

Patricia Paulette Fulghum Grice ("Ms. Grice") and Larry Randolph Grice ("Mr. Grice") were married on March 19, 1982. This was the third marriage for both parties. At the time of the marriage, Mr. Grice had two children from a previous marriage and Ms. Grice had custody of her three children from a previous marriage. After approximately one year of marriage, Ms. Grice gave birth to the parties' only child, a daughter, Mary Beth. After the birth of their daughter, Ms. Grice chose to remain home, continuing in her role as mother and homemaker.

At the time of the marriage, Mr. Grice was employed by Inland Container Paper Board and Packaging ("Inland"), where he had worked for approximately ten years. Mr. Grice maintained his employment with Inland throughout the marriage, while Ms. Grice did not work outside of the home with the exception of running an antique and gift store for a brief period of time and occasional retail work for a friend.

In December of 1999, after approximately seventeen years of marriage, Ms. Grice filed a complaint seeking an absolute divorce from Mr. Grice. As grounds for divorce, Ms. Grice alleged that the parties had irreconcilable differences and that Mr. Grice was guilty of inappropriate marital conduct. In January of 2000, Mr. Grice filed an answer and counterclaim, admitting that there were irreconcilable differences, but denying inappropriate marital conduct on his part. In his counterclaim, Mr. Grice asserted that irreconcilable differences existed and that Ms. Grice was guilty of inappropriate marital conduct.

On March 8, 2001, the chancery court entered an order appointing the Clerk and Master to serve as Special Master for the purpose of ascertaining the origin, value and ownership of the parties' personal property. By agreement, the parties enlarged the scope of the proceeding as to allow the Special Master to consider the parties' real property, their marital indebtedness and other facts pertinent to the equitable distribution of the marital property. The Special Master filed his report on May 8, 2001. The record shows no objection to this report from either party.

At trial, Ms. Grice testified that she had feelings of depression which affected her ability to interact with people and resulted in her desire to stay at home. Ms. Grice further claimed that her emotional state hindered her from being employed. However, as noted by the trial court, other evidence in the record belied Ms. Grice's testimony. Evidence was presented which showed that at the same time Ms. Grice was claiming to be unable to leave her home, she was going on trips and was shopping very frequently.

The court, after equally dividing the parties' assets and liabilities and assessing a greater portion of fault to Mr. Grice, awarded Ms. Grice alimony *in solido* in the amount of $10,000 and rehabilitative alimony in the amount of $21,000 to be distributed over a period of eighteen months. Ms. Grice was to receive the $10,000 lump sum payment on the front end and was to receive the $21,000 award in increments of $2,000 per month for a period of six months, thereafter receiving $1,000 per month for the following six months, then $500 for another six months. At the end of this time, the rehabilitative alimony would cease. The court then declared the parties divorced pursuant to T.C.A. § 36-4-129 based on its finding that both parties contributed to the demise of the marriage. Ms. Grice filed a notice of appeal and this case is now properly before this court.

## II. Issue

The parties have raised the following issue for our review:

1.      Whether the trial court erred in granting Ms. Grice rehabilitative alimony as opposed to alimony *in futuro*.

### III.  Standard of Review

Our review of the trial court's findings of fact is *de novo* upon the trial court's record, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).  See also *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).  With respect to the trial court's conclusions of law, however, our review is *de novo* with no presumption of correctness.  *Walker v. Walker*, No. E2001-01759-COA-R3-CV, 2002 Tenn. App. LEXIS 374, at *6 (Tenn. Ct. App. May 29, 2002) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)).  This court gives great weight to the trial judge's factual findings which rest on determinations of  witness credibility.  *Sullivan v. Sullivan*, No. M2001-03025-COA-R3-CV, 2002 Tenn. App. LEXIS 641, at *5 (Tenn. Ct. App. Sept. 5, 2002) (citing *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)).   Accordingly, absent clear and convincing evidence to the contrary, we will not reassess the trial court's determinations of witness credibility.  *Id.*  (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).

In making its alimony determination, the trial court must consider the factors enumerated at Tennessee Code Annotated 36-5-101(d)(1)(A)-(L).  *Crabtree*, 16 S.W.3d at 360.  Where the trial court has made no findings of fact regarding the relevant factors, the appellate court must conduct its "own independent review of the record to determine where the preponderance of the evidence lies."  *Id.*  (citing *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999)).

### IV.  Law and Analysis

Ms. Grice contends that the trial court erred in awarding her rehabilitative alimony as opposed to alimony *in futuro* due to her inability to be rehabilitated.  She further contends that the trial court failed to apply the appropriate factors in making its alimony determination, requiring this court to make a *de novo* review of the trial court's findings.  Finally, Ms. Grice contends that she should be awarded further alimony *in solido* to cover her attorney's fees.  Mr. Grice submits that the findings of the trial court are evident and that the factual findings are entitled to a presumption of correctness on appeal.

This court reviews matters of alimony under an abuse of discretion standard.  *Sullivan*, 2002 Tenn. App. LEXIS 641, at *5-6.  If the discretionary decision of the trial court falls within a range of acceptable alternatives, appellate courts will not second-guess the trial court's decision simply because the appellate court would have chosen another alternative.  *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).  Reviewing courts will interfere with a trial court's discretionary decision only where the trial court has incorrectly applied or misconstrued the applicable legal principles or has acted against the substantial weight of the evidence.  *Id.* (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 695 (Tenn. Ct. App. 1999)).  Thus, we review the trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is

supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.* (citing *BIF v. Service Constr. Co.*, 1988 Tenn. App. LEXIS 430, at *9 (Tenn. Ct. App. July 13, 1988)).

There are no hard and fast rules for determining whether spousal support should be awarded. *Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996) (citing *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Rather, the decision to award alimony is dependent on the facts and circumstances of each case. *Sullivan,* 2002 Tenn. App. LEXIS 641, at *6. In making its alimony determination, the trial court must consider the factors enumerated at Tennessee Code Annotated 36-5-101(d)(1)(A)-(L).[1] *Crabtree*, 16 S.W.3d at 360. While all of

---

[1]Section 36-5-101(d)(1) of the Tennessee Code Annotated provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony *in solido* and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(continued...)

the relevant factors must be considered, the need of the recipient spouse and the obligor's ability to pay are the primary considerations. *Walker*, 2002 Tenn. App. LEXIS 374, at *8-9 (citing *Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998)); *Goodman v. Goodman*, 8 S.W.3d 289, 295 (Tenn. Ct. App. 1999). The trial court has "'broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration.'" *Walker*, 2002 Tenn. App. LEXIS 374, at *6 (quoting *Anderton*, 988 S.W.2d at 682). Generally, appellate courts are disinclined to interfere with a trial court's determination regarding spousal support except where there has been an abuse of discretion. *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002) (citing *Goodman*, 8 S.W.3d at 293).

Our Supreme Court, in *Crabtree v. Crabtree*, held that there is a legislative preference for an award of rehabilitative alimony and that alimony *in futuro* should be awarded only after determining that rehabilitation is not feasible. *Robertson*, 76 S.W.3d at 340 (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 358-359 (Tenn. 2000)). The purpose of rehabilitative alimony is to "support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *Walker*, 2002 Tenn. App. LEXIS 374, at * 11 (citing *Robertson*, 76 S.W.3d at 340-41).

An award of rehabilitative alimony is appropriate where the trial court finds that the recipient spouse can be economically rehabilitated. *Crabtree*, 16 S.W.3d at 360. Where the court determines that economic rehabilitation is not feasible, the court may then award alimony *in futuro*. *Id*. Provided that the trial court considers the factors enumerated in Tennessee Code Annotated § 36-5-101(d)(1) and the purposes behind an award of alimony, it is afforded wide discretion in making its determination whether to award alimony *in futuro* or rehabilitative alimony. *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001) (citing *Crabtree*, S.W.3d at 360).

Turning to the case *sub judice*, the trial judge, in his order, affirmatively found that Ms. Grice was not entitled to alimony *in futuro* based upon the evidence presented and witness credibility. The court, stating that Ms. Grice needed a "period of time for adjustment," awarded Ms. Grice rehabilitative alimony in the amount of $21,000 to be awarded over an eighteen month period. Ms. Grice was also awarded alimony *in solido* in the amount of $10,000.

---

[1](...continued)

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. 36-5-101(d)(1) (Supp. 2001).

In denying the request for alimony *in futuro*, the court found that Ms. Grice's testimony regarding her inability to be employed was not credible. The court found that Ms. Grice did not have a mental disorder that would "debilitate her and prevent her from doing anything gainful." The trial judge stated that after observing Ms. Grice's testimony, he noticed nothing about her that "prevents her from doing the things that all other ordinary people do; that is, getting out and going to work and trying to make a living."

Our review of the record shows that the parties were married for a period of nineteen years and that both parties were at fault to some degree in contributing to the demise of the marriage.[2] The record further reveals that the parties are close in age and have a similar level of formal education. Even though Ms. Grice is not currently employed, the trial court found that she does not suffer from a mental condition and there appears no reason that she cannot be gainfully employed. Neither party suffers from a physical condition that would prevent employment and there are no minor children of the marriage that would prevent employment.

The record shows that Ms. Grice received separate property in the amount of $2,360, with Mr. Grice receiving $940 in separate property. The division of marital property was essentially equal. The report of the Special Master indicates that there was no proof that either party contributed to the education, training or increased earning power of the other party. As to the extent of tangible and intangible monetary and homemaker contributions made by each party during the marriage, the Special Master found that Mr. Grice was the primary wage earner, while Ms. Grice was primarily a homemaker while at times contributing as a wage earner. The trial judge's order states that the incentive savings plan (401K) should be divided equally between the parties and that Ms. Grice is entitled to a fractional share of Mr. Grice's defined benefit pension. No evidence was presented regarding tax consequences to either party, therefore the Special Master found none to exist.

As to the relative earning capacity of each spouse, Mr. Grice makes approximately $74,000 per year, whereas Ms. Grice is currently unemployed. It is notable that from January 1, 2000 until the time of trial, Ms. Grice has chosen not to look for employment. Also notable, evidence was presented which showed that Ms. Grice made deposits to her bank accounts which could not be accounted for, creating the appearance that Ms. Grice has undisclosed sources of income.

After reviewing the appropriate statutory factors and the record in this case, we affirm the trial court's award of rehabilitative alimony. We conclude that an award of alimony *in futuro* is unwarranted and would not further the legislative goal of encouraging self-sufficiency following divorce. We shall, however, modify the amount of rehabilitative alimony in light of the present disparity in earning capacity, the length of the marriage and Ms. Grice's sporadic work history. In the divorce decree, the trial court awarded Ms. Grice rehabilitative alimony in the amount of $21,000. As modified, Ms. Grice shall receive an additional award of $6,000 in rehabilitative alimony, payable in installments of $500 per month for a period of 12 months to begin on November

---

[2] The court found that Mr. Grice was guilty of marital infidelities and that Ms. Grice was guilty of acts that would constitute inappropriate marital conduct.

20, 2002.[3]  As modified, Ms. Grice will receive rehabilitative alimony in the total amount of $27,000.  The increase in rehabilitative alimony should assist Ms. Grice in becoming gainfully employed before the cessation of alimony payments.

Ms. Grice also requested additional alimony *in solido* to cover her attorney's fees.  The lower court awarded Ms. Grice alimony *in solido* in the amount of $10,000.  Ms. Grice contends that one can infer from the court's ruling that this amount was intended to cover her attorney fees,  however the purpose of this award is not expressly stated in the court's ruling nor is its purpose explained in the Final Judgment.

Ms. Grice contends that, if the trial court's award of alimony *in solido* was intended to be an award of attorney fees, her argument regarding her need for alimony *in futuro* is even more compelling because she would be left with no liquid assets with which to support herself.  Alternatively, if the lower court intended the award to be a source of future income and not to be an award of attorney's fees, Ms. Grice contends that the failure to award her attorney's fees was an abuse of discretion.  Ms. Grice further contends that the preponderance of the evidence indicates that she is without sufficient assets to pay her attorney fees.

An award of attorney's fees is treated the same as an award of alimony.  *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998).  In making its determination whether to award attorney fees, the trial court must consider the same factors that are used when considering a request for alimony.  *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).  As with alimony, need is the primary factor to consider in awarding attorney fees.  *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996).  An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient funds to pay his or her attorney's fees.  *Id*.  The decision to award attorney fees is within the discretion of the trial court and this court will not interfere with a trial court's decision regarding attorney fees unless the trial court abused its discretion.  *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995).

The trial court awarded Ms. Grice alimony *in solido* in the amount of $10,000.  It appears from his comments in the record that the trial court intended the award to cover attorney fees.  In making the award of alimony *in solido*, the trial judge did not expressly state whether or not the award was to cover attorney's fees, nor is an explanation given in the Final Judgment.  Prior to making the award, however, the trial judge stated, "[s]he's going to need a period of time for adjustment.  You've had sizeable attorney fees, and she's had sizeable attorney fees.  And Mr. Bradley [Ms. Grice's attorney] had, I think, been paid about $2,000, he says, and this figure is a total,

---

[3]  In the trial court's final divorce decree, Mr. Grice was to pay Ms. Grice the sum of $2,000 per month for a period of six months beginning on May 20, 2001.  Thereafter, Mr. Grice was to pay $1,000 per month for a period of six months beginning on November 20, 2001.  Then beginning on May 20, 2002, Mr. Grice was to pay Ms. Grice the sum of $500 per month for a period of six months.  After this period, alimony was to cease.  As modified by this Court, beginning on November 20, 2002, Mr. Grice shall pay to Ms. Grice the sum of $500 per month for an additional period of twelve months.  At the end of this period, all rehabilitative alimony shall cease.

right?" The judge then stated "[a]ll right. And so I'm going to award her alimony in solido, that is, in a lump sum, in the amount of $10,000."

While not expressly stated, we infer from the above language that the trial court intended the award of alimony *in solido* to cover attorney fees. Upon review of the entire record and for the reasons noted supra in the determination of alimony, we do not believe the trial court abused its discretion in awarding Ms. Grice a substantial portion of her attorney fees. Ms. Grice's request for attorney fees incurred on appeal is denied.

## V. Conclusion

Based on the proof contained in the record and the trial judge's determinations of witness credibility, we find the statutory factors enumerated in Tennessee Code Annotated § 36-5-101(d)(1)(A)-(L) are satisfied and we affirm the trial court's award of rehabilitative alimony as modified.

Ms. Grice is not entitled to attorney fees incurred on appeal. Costs on appeal are assessed equally against the Appellant, Patricia Paulette Fulghum Grice, and her surety, and the Appellee, Larry Randolph Grice, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE