# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 20, 2011 Session

## WILLIAM L. DOWNING v. SHERRIE J. DOWNING

**Appeal from the General Sessions Court for Sumner County**
**No. 83GS2-2009-GS-2     Barry R. Brown, Judge**

**No. M2010-00045-COA-R3-CV - Filed June 13, 2011**

The trial court granted the wife a divorce on the ground of inappropriate marital conduct, and divided the marital property, awarding the marital home to the wife and a nearby piece of unencumbered business property to the husband.  The court also made the husband responsible for 60% of the mortgage obligation on the marital home and allowed the wife to retain her entire 401(k) retirement account.  The husband contends on appeal that the division of property and debt was inequitable and that the trial court impermissibly awarded the wife her 401(k) account in the form of alimony in solido.  We affirm the division of marital property and marital debt.  We also find that there was no alimony award, because the final order in this case, signed by the judge, treats the 401(k) as part of the division of marital property rather than as alimony.  However, it appears to us that the trial court made some calculating errors when it ordered the husband to pay specific monthly amounts on the home mortgage.  We therefore vacate that portion of the court's order and remand this case to the trial court so that it may correct those calculations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Vacated in Part, and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Patti Jon Burton Garner, Gallatin, Tennessee, for the appellant, William L. Downing.

Gary Michael Williams, Hendersonville, Tennessee, for the appellee, Sherrie J. Downing.

## OPINION

### I. A MARRIAGE OF LONG DURATION

William J. Downing ("Husband") and Sherrie J. Downing ("Wife") married in 1983. The two children who were born of their marriage were aged 18 and 14 at the time of the parties's divorce. Wife worked during the entirety of the marriage at Lifeway Christian Resources (formerly the Baptist Sunday School Board) in Nashville. Husband also worked steadily during the marriage, mostly at jobs involving automotive sales. In 2000, he began operating his own automobile repair business out of the garage behind the marital home, and he continued in that business up to and including the time of divorce.

In December of 2008, Husband announced to Wife that he was unhappy and that he no longer loved her. Shortly thereafter, he moved out of the marital home. On January 2, 2009, he filed a complaint for divorce in the General Sessions Court of Sumner County, alleging that there were irreconcilable differences between the parties. *See* Tenn. Code Ann. § 36-4-129. He also stated that both parties were fit and proper parents, but he did not ask for custody of the children.

On March 25, 2009, Wife filed a motion for pendente lite support. On the same day, she filed a motion for exclusive possession of the marital home. Wife alleged that after leaving the marital home and moving in with his father, Husband had stopped making payments on the parties' extensive credit card bills and that he had only contributed $245 towards the care of the children since his departure. Wife accordingly asked the court to order Husband "to contribute to the marital bills and expenses and provide sufficient support for her and the children in at least the amount that he has always paid monthly during the marriage, pending further orders of this Honorable Court." There is no indication in the technical record that a hearing was ever conducted on Wife's motion.

Husband subsequently amended his complaint to allege inappropriate marital conduct on the part of Wife as an additional ground for divorce. Wife filed an answer and counter complaint for divorce on June 24, 2009. She admitted that there were irreconcilable differences between the parties, denied that she was guilty of any inappropriate conduct, and suggested that Husband was himself guilty of inappropriate marital conduct. She asked for an equitable division of marital property and for custody of the children. Her counter complaint did not include a request for alimony, an omission that is the basis of one of Husband's arguments on appeal. Shortly thereafter, Wife and her attorney parted ways, and she retained new counsel.

On September 2, 2009, Wife filed a motion to amend her counter complaint. She mentioned her earlier request for pendente lite support, stated that her prior counsel had inadvertently left the request for alimony out of her counter complaint, and declared that "there is a need for alimony in this matter." In a trial memorandum, filed on October 1, 2009, Wife repeated her request for alimony, and asked the court to award her $1,000 per month. There is no order in the technical record that indicates a ruling on Wife's motion to amend.

## II. THE DIVORCE HEARING

The final divorce hearing was conducted on October 2, 2009. Aside from the parties, the only witnesses to testify were a professional appraiser and a private investigator who Wife had hired to find evidence of infidelity against Husband. Despite the lack of an order in the technical record regarding Mother's motion to amend her counter complaint to request alimony, Husband's attorney acknowledged during his opening argument that the trial court had granted her motion.

The testimony of the parties mostly involved financial matters. Their joint income tax returns from 2005 to 2008 were entered into the record, and showed that both parties earned fairly reliable incomes. In response to an interrogatory, Wife stated that her annual income was $37,659. However, her 2008 W-2 form from Lifeway showed Social Security income of $31,202, and she suggested that the higher figure was a mistake. Husband's Profit or Loss Statement from the same year showed gross receipts of $109,595. The "cost of goods sold" (presumably auto parts and supplies) was listed at $49,852, leaving gross income of $59,743. He reported additional expenses of $24,044, resulting in a profit of $35,699.

There was no evidence that the parties, despite their income, had saved any money. There was no discussion during trial of any savings accounts, certificates of deposit, or of any investments, other than those in wife's 401(k) retirement account. The evidence showed that the parties spent everything they earned, and then some. Wife testified that all her spending was for the benefit of the children, and that she would not skimp on them so long as Husband continued to "throw money out the window" by drag racing.

Husband acknowledged that he has participated in drag racing for a long time, owning cars and racing them on a weekly basis. Referring to the costs, he stated that "you spend a lot of money real quick if you don't watch it." He testified that aside from maintenance and fuel costs, there is usually a $50 entry fee to race. There are also prizes for winners, usually $1,300 but sometimes quite a bit more: $5,000, $10,000, or even $100,000. Husband races for pleasure, but he chooses to treat drag racing as a business for tax purposes. Although he wins some races, his tax records and his testimony show average losses of about $9,000

annually.

It was undisputed that Husband took over the family's finances in 1998, that he was responsible for paying the bills, and that Wife trusted his judgment on financial matters. But Husband testified, "I am behind on a lot of bills." The proof showed that the parties had accumulated a significant amount of credit card debt by the time of the divorce hearing.

Husband testified that a SunTrust card in his name was used for his business and also for car expenses, including vehicles belonging to his wife and daughter. That card had a balance of $10,178. He also testified to a $13,839 balance on a GreenBank credit card that he used solely for business expenses. Husband also had a Chase credit card with a balance of $9,630 that Wife did not know about, but that Husband insisted he used "to support the lifestyle of my family." However, other than that one statement during his testimony, he did not present any evidence that he used that card for family purposes. Wife also had her own MNBA credit card, which she testified she used for vacations and for the children's needs. She also had a Kohl's Department Store card. The balance on the MNBA card was about $8,000, and the balance on the Kohl's card was about $800.

Husband had also obtained a line of credit for business purposes from Chase Home Finance that was secured by a second mortgage on the marital home. Although the line of credit was in Husband's name only, he testified that Wife used it on several occasions without his permission by signing his name on line of credit checks.[1] The balance owed at the time of the divorce hearing was $24,813. The largest debt of the parties, however, was the primary mortgage on the marital home, the unpaid balance on which had greatly increased as the result of a 2007 transaction whereby Husband bought property near the marital home for use as a permanent location for his auto repair business.

The marital home was located at 612 New Shackle Island Road in Hendersonville. Husband testified that he had long had his eye on a 1.3 acre lot for Downing Motors at 608 New Shackle Island Road. The only structures on the property were a single wide trailer with an addition built onto it and a barn. The owner had been unwilling to sell, but in 2007 he offered to sell the property to Husband for $90,000 if the purchase could be closed quickly. Husband agreed to the price without having the property appraised and even though

---

[1]Husband entered six of those checks into the record as an exhibit to his testimony. Three of those checks, with a total value of $900, were made out to Sherri Downing. Two checks made out to Billy Downing were in a different handwriting, and had a total value of $5,100. One check, in the same handwriting as the those made out to Billy Downing, was made payable to Mr. Transmission for $1571.83.

it was not zoned for commercial use.[2]

Husband made a $5,000 down payment on the lot and borrowed $85,000 from his father to pay the rest. He then attempted to obtain a bank loan to repay his father, but found that he could not use the lot as collateral for the loan. On the advice of a Chase loan officer, Husband used the equity on the marital home instead. He borrowed enough money to not only repay his father, but also to pay off some high interest credit card debt.

The marital home was appraised for property tax purposes at $228,200, but the appraiser testified at trial to an actual value of $195,000. Prior to the transaction involving the lot, there was less than $30,000 of debt remaining on the first mortgage. Husband's borrowing increased the balance owed on the home mortgage to $127,719. The transaction left the business property at 608 New Shackle Island Road unencumbered.

Husband and Wife both signed the loan papers on the business property. Wife testified that she trusted Husband to handle the parties' financial matters, that he told her that the loan was going to be secured by the lot itself, and that she only found out about the refinancing of the mortgage on the marital home during the divorce proceedings. Husband confirmed that he did not tell Wife that he used the marital home as collateral for the loan. The parties agreed at trial that in the division of marital property Wife should get the marital home and Husband should get the lot, but they did not agree as to the allocation of marital debt.

At the conclusion of proof, the trial court took the matter under advisement. The court set out its decision in a brief unsigned letter ruling, which was used as the basis for the final decree of divorce, filed on December 4, 2009. The court awarded Wife a divorce on the ground of inappropriate marital conduct. Wife was also awarded custody of the minor child, and Husband was ordered to pay child support of $834 per month in accordance with the child support guidelines, "until Cara Sheree Downing has graduated high school, at such time child support would be recalculated on the basis of one (1) child."

The list of marital property in the final decree of divorce included the two pieces of real property discussed above, household goods, a boat, and numerous vehicles. The parties were in agreement for the most part about the division of that property, although there were some disputes as to valuation. The trial court divided the household goods and vehicles in accordance with the parties' wishes, including the award of the marital home to Wife and of the unimproved lot to Husband.

---

[2]A subsequent appraisal of the property valued it at $65,000. Husband was unable to get the property rezoned for commercial use

The court awarded Wife a lien of $103,518 on Husband's lot, "which represents the amount the Court has awarded the Husband to pay towards the Chase line of credit and the Chase mortgage both of which are associated with the home awarded to the Wife at 612 New Shackle Island Road, Hendersonville, Tennessee. This lien shall be attached to the lot located at 608 New Shackle Island Road, Hendersonville, Tennessee." Husband was prohibited from disposing of any of his assets, including the lot, or from encumbering, mortgaging or borrowing against it "without the written agreement of the parties or approval of the court."

The court's list of marital property also included Wife's 401(k) retirement account with a total value of $44,000, and an IRS Income Tax refund check and a stimulus check with a total value of $6,995.[3] The two checks had already been deposited and spent by the time the divorce complaint was filed. The court awarded Wife the entire 401(k) retirement account, and the amounts of the two checks. As to these items of marital property, the court stated in its letter ruling that "[t]he Husband would have been entitled to $25,477. His portion goes to the wife as alimony in solido." The Final Decree of Divorce, which was drafted by Husband's attorney and signed by the trial judge, awards Wife her 401(k) and the two checks as part of its division of marital property, however, and does not mention alimony at all.

Husband was ordered to take full responsibility for payment of the debt on the GreenBank credit card and the SunTrust credit card. He was also ordered to pay 60% of the Chase credit card, 60% of the Chase line of credit, and 60% of the first mortgage on the marital home. Wife was ordered to pay her MBNA and Kohl's credit cards, 40% of the Chase credit card, 40% of the Chase line of credit, and 40% of the first mortgage on the marital home.[4] Both parties were barred from making any further withdrawals on the Chase line of credit. The parties were ordered to equally split their son's $1,080 orthodontic bill.

Wife filed a motion to alter or amend the judgment. She asked that the parenting plan and legal descriptions of the real property be incorporated into the final decree. Husband filed a motion to stay the judgment pending the results of the appeal. The trial court granted Wife's request, and also amended its judgment by setting out a strict schedule for Husband to follow in paying off his obligations on the Chase line of credit and on the home mortgage.

---

[3]The court also noted that Wife had a vested retirement plan, with a benefit of $1,088 per month payable when she reaches the age of 67, on March 1, 2028.

[4]The trial court calculated Husband's 60% share of the mortgage obligation as $88,631. However, 60% of $127,719 is $76,631.40, not $88,631. The trial court also calculated Wife's 40% share of the mortgage obligation as $39,088. 40% of $127,719 is $51,087.60

Amortization schedules for both obligations were incorporated into the court's order. We will discuss the schedule on the mortgage obligations in more detail in Section III(D) of this opinion. The court denied Husband's motion to stay. This appeal followed.

## III. ANALYSIS

### A. The Standard of Review

In actions for divorce or for legal separation, Tennessee Code Annotated § 36-4-121(a)(1) authorizes the trial court to equitably divide, distribute, or assign the marital property "without regard to marital fault in proportions as the court deems just." *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004). The court is directed to consider all relevant factors in its distribution of marital property, including those listed in Tennessee Code Annotated § 36-4-121(c).[5] *Jolly v. Jolly,* 130 S.W.3d at 786; *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003), so long as the division is made without regard to marital fault.

The trial court's task is to make an equitable, or fair, distribution of property. "The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007) (citing *Flannary*, 121 S.W.3d at 650). Because the division of marital property is "not a mechanical process," and because decisions regarding division of marital property

---

[5] The factors the courts are directed to consider in making a division of the marital estate include:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate,financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party; and
(10) Such other factors as are necessary to consider the equities between the parties.

Tennessee Code Annotated § 36-4-121(c).

are fact-specific and many circumstances surrounding the property and the parties play a role, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Keyt*, 244 S.W.3d at 328; *Jolly*, 130 S.W.3d at 785; *Flannery*, 121 S.W.3d at 650; *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997).

As a general matter, reviewing courts will evaluate the fairness of a property division by its final results. *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Further, "unless the court's decision is contrary to the preponderance of the evidence or is based on an error of law, we will not interfere with the decision on appeal." *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citing *Goodman v. Goodman*, 8 S.W.3d 289, 298 (Tenn. Ct. App. 1999)). Thus, appellate courts ordinarily defer to the trial court's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Jolly*, 130 S.W.3d at 785-86.

## B. The Division of Property and Debt

Tennessee Code Annotated § 36-4-121(a)(1) requires the court to order an equitable division of marital property. An equitable division is not necessarily an equal division. *Larsen Ball v. Ball,* 301 S.W.3d 228, 231 (Tenn. 2010); *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Smith v. Smith*, 984 S.W.2d at 609. Husband complains that the trial court's division of marital property and debt in this case was inequitable because it was very one-sided in favor of Wife. He first observes that in accordance with the trial court's own valuations, the total value of the assets awarded to Wife, (including her 401(k)), amounted to $264,155, while the total value of the assets awarded to him amounted to only $93,600.

As we noted above, the vast majority of the assets were divided by mutual consent. The major thrust of Husband's argument, however, is that in light of the division of property, the division of marital debt was inequitable. He complains that the debts the court ordered him to pay amounted to $134,154, while Wife was only ordered to pay $53,370. All debts incurred by either or both parties during the course of a marriage are properly classified as marital debt, and are subject to equitable division in the same manner as marital property. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). *See also Cutsinger v. Cutsinger,* 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995); *Mondelli v. Howard,* 780 S.W.2d 769, 772 (Tenn. Ct. App. 1989).

When dividing marital debt, our courts are directed to consider the same factors that are used to divide marital property, as well as, "(1) which party incurred the debt and the debt's purpose; (2) which party benefitted from incurring the debt; and (3) which party is best able to assume and repay the debt." *Mondelli v. Howard,* 780 S.W.2d at 772 (citations omitted). When practicable, the debts should also follow the assets they purchased.

*Mondelli v. Howard,* 780 S.W.2d at 773.

In this case, the trial court divided the credit card debt by ordering Husband to pay off the debts incurred on his GreenBank and SunTrust credit cards. According to Husband's testimony, he primarily used those cards to finance his business. We note that Husband did not segregate the finances for his profit-making auto repair business from those for his money-losing drag racing enterprise.

Wife was ordered to pay the debt on her MBNA and Kohl's credit cards. She testified that she primarily used her cards for vacations and for the needs of her children. While it could be argued that the debt Husband incurred because of his business expenses was for the benefit of both parties, it could also be argued that the debt Wife incurred because of the children's needs likewise benefitted both parties. We see nothing inequitable in the trial court dividing those debts as it did.

The trial court also ordered to Husband to pay 60% of the Chase credit card, 60% of the Chase line of credit, and 60% of the first mortgage on the marital home. Husband argues on appeal that it was not equitable for him to have to pay more than 50% of those debts. We note, however, that all three of those debts were incurred by Husband in his role as manager of household finances. While he testified that the Chase credit card, which had a balance of $9,360 at the time of trial, was used "to support the lifestyle of my family," he acknowledged that the line of credit, whose balance was $24,813, was obtained for business purposes. Nothing in the record convinces us that the allocation was inequitable or that the trial court applied an incorrect standard or reached a conclusion contrary to the facts.

As for the mortgage on the marital home, Husband decided to buy a piece of property for Downing Motors without consulting Wife, and he used the marital home as collateral for the purchase without even informing her that he was doing so. His action resulted in an increase on the mortgage debt from less than $30,000 to $127,719. Husband admitted that he made a bad decision. Among the factors the trial court is directed to consider in dividing marital property is "[t]he contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property . . ." Tennessee Code Annotated § 36-4-121(c)(5). In this case, there is no doubt that both parties made substantial contributions to the acquisition of the marital properties, but Husband's "bad decision" dissipated the value of one of the prime assets of the parties, the equity in the marital home. The evidence therefore does not preponderate against the trial court's decision to make Husband responsible for 60% of the mortgage debt.

**C. The Arguments About Alimony**

Husband argues that the trial court erred by allowing Wife to keep 100% of her interest in her 401(k) retirement account and in two government checks that were made payable to both parties and which were deposited and spent prior to the filing of the divorce complaint. Since the money represented by the two checks has already been spent, it did not exist at the time the trial court purported to award it. Our Courts cannot divide or award what does not exist. While the court can take that amount into consideration in determining where the equities lie, the purported award itself was ineffectual. As for the 401(k) retirement account, the proof showed that Wife acquired the entire account during the course of the marriage. Thus, it is included in the statutory definition of marital property:

"Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing a complaint for divorce, . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A). *See also Snodgrass v. Snodgrass*, 295 S.W.3d 240, 243 (Tenn. 2009) (holding that funds deposited into a 401(k) during marriage are marital assets).

The trial court was therefore entitled to determine the proper disposition of the 401(k) pursuant to its authority under Tenn. Code Ann. § 36-4-121(a)(1) to equitably divide marital property. Depending on the equities of the situation, a court can divide the value of a retirement account between the parties or award the entire amount to one party or another. As a practical matter, a court would not necessarily order that funds be directly withdrawn from a 401(k) account in order to accomplish a property division, because such a withdrawal would likely result in tax consequences and possibly even an early withdrawal penalty, and one of the factors the courts are directed to consider in division of marital property is "[t]he tax consequences to each party." Tenn. Code Ann. § 36-4-121(c)(9). Any decision as to a particular asset is reviewed in the context of the overall distribution of the marital estate.

Because the trial court declared in its letter ruling that the 401(k) was awarded to Wife as alimony in solido, the parties focused all their arguments on the propriety of such an alimony award under the circumstances of this case. Husband argued that the trial court should not have ordered alimony because Wife did not ask for it in her counter-complaint and because there was no evidence that the court considered the statutory factors that must be applied before alimony is granted. *See* Tenn. Code Ann. § 36-5-121(i).

Although the court's unsigned letter ruling did speak of Wife's 401(k) account in

terms of alimony in solido, the final order in the record signed by the trial judge does not mention alimony, but instead treats its award of the 401(k) account to Wife as a division of marital property.[6]  "A court speaks only through its written judgments, duly entered upon its minutes." *Green v. Moore,* 101 S.W.3d 415, 419 (Tenn. 2003) (quoting *Evans v. Perkey*, 647 S.W.2d 636, 640 (Tenn. Ct. App. 1982)); *Environmental Abatement v. Astrum R.E.*, 27 S.W.3d 530, 536 (Tenn. Ct. App. 2000).  Further, "the signature of the judge is mandatory to effectuate a judgment or order of final disposition." *Green v. Moore*, 101 S.W.3d at 420. *See also* 58 Tenn. R. Civ. P.; *Ball v. McDowell*, 288 S.W.3d 833 (Tenn. 2009).

We therefore need not consider whether alimony was appropriate in this case, but only whether the award of the 401(k) account to Wife is consistent with an equitable division of the entire marital state.  This was a marriage of long duration, both parties contributed to the acquisition of marital assets, and Wife will be receiving a much larger portion of the marital assets, even without considering the 401(k).  Further, Husband did not enjoy the same opportunity that Wife did to acquire a tax-advantaged retirement account through his work.

However, Husband managed all the finances for the family starting in 1998, and he had enough income left over after paying for family and business expenses to contribute to a savings account or open a retirement account.  Instead, he chose to use any surplus for his hobby.  We cannot fault him for doing what he enjoyed, but the proof showed that he raced for at least ten years and that he lost on the average about $9,000 each year, thereby incurring total losses of greater magnitude than the value of the 401(k) account.  We are therefore unable to conclude that it was inequitable to allow Wife to retain the full benefit of the retirement account that she established during the parties' marriage.  More importantly, we cannot find that the trial court's distribution of the whole marital estate was inequitable.

### D.  Wife's Issue

Wife raises one issue of her own on appeal, involving Husband's payment schedule on his home mortgage obligation.  In its order amending the final judgment, the trial court declared that the Husband's 60% obligation on the home mortgage amounted to $88,631, and it divided that obligation into two parts.  The court ordered Husband to pay $30,000 at a rate of $1,000 per year plus interest over 336 months.  The order recited that Husband's payments on that obligation would come to $198.96 in accordance with an attached amortization table.

The court ordered the remainder of the Husband's obligation ($58,631) to be paid over

---

[6]Another document in the record, also titled Final Decree of Divorce, drafted by Wife's attorney, but not signed by the trial judge, declares, consistent with the court's letter ruling, that the 401(k) and the two checks are awarded to Wife as alimony in solido.

the life of the mortgage, with the husband paying $388.84 a month, 60% of $648.88, which is the monthly obligation over the same period on the remaining mortgage debt in accordance with another attached amortization table. Wife argues that the payment schedule is inequitable, because she cannot refinance the mortgages while Husband's name is on the deed. She therefore asks this court to accelerate Husband's obligation by ordering him to tap into the equity in his lot and apply it to the mortgage on the home so that the mortgage can be more quickly paid off.

While we sympathize with Wife's plight, we are mindful that the division of marital property and debt has left Husband with heavy obligations of payment and very little in the way of assets other than that single unencumbered piece of property. We are also aware that after the mortgage on the marital home is paid off, Husband will not share in the valuable equity, which will belong solely to Wife. Under the circumstances, we find no basis to reverse the trial court's decision on this issue.

It also appears that the trial court incorrectly calculated Husband's share of the home mortgage obligation. The court ordered him to pay 60% of the mortgage, and recited that this amounted to $88,631. However, 60% of a mortgage debt of $127,719 amounts to $76,631.40, not $88,631. As we noted, the Court declared that it was breaking Husband's total obligation of $88,631 into portions valued at $30,000 and $58,631 respectively, and it calculated monthly obligations for each of those parts. Unless we are mistaken, the size of the obligation on at least one of these parts must be incorrect.

We accordingly vacate that portion of the amended final decree that created a specific payment schedule for Husband's obligation on the home mortgage, and we remand this case to the trial court so it can amend its order to correctly reflect Husband's monthly obligation to pay 60% of the mortgage on the marital home. At the request of the parties, the trial court may also simplify Husband's obligation by requiring him to make only one payment a month on the home mortgage rather than two.[7]

---

[7]We note that the court offered no explanation for its decision to divide the mortgage obligation into two parts. We cannot see any advantage for either party in compelling Husband to make two separate payments each month on what the evidence indicates to be a single obligation. We note that the amortization tables incorporated into the trial court's order show that the balances on both parts of Husband's obligation are amortized for the same period (336 months) and at the same interest rate (6.75%).

**IV.**

The judgment of the trial court as to the division of marital property and debt is affirmed, but the court-ordered schedule for Husband's payment of the home mortgage is vacated. We remand this case to the General Sessions Court of Sumner County for further proceedings. Tax two-thirds of the costs on appeal to the appellant, William J. Downing, and one-third to the appellee, Sherrie J. Downing.

_____
PATRICIA J. COTTRELL, JUDGE

It is unclear why the trial court chose to characterize the IRS check and the stimulus check as property subject to division. The Wife's attorney stated during oral argument that the checks were deposited into the parties' joint account, and that Wife withdrew it and used most of it to go on a mission trip and the rest for the cheerleader expenses of the parties' daughter. Further, the money was spent prior to the filing of the divorce complaint.

All debts incurred by either or both parties during the course of a marriage are properly classified as marital debt. *Alford v. Alford*, 120 S.W.3d 810, 811 (Tenn. 2003).

When we look more closely at the property division, however, the imbalance is not quite as great as it first appears. Husband asked the trial court to award Wife the most valuable marital asset by far: the marital home at 608 New Shackle Island Road, which the court valued at $195,000. For his part, Husband asked for and received the lot at 608 New Shackle Island Road, which the court valued at $65,000. When the two items of real property that were divided by mutual consent are removed from the equation, the value of the property awarded to Wife (including the alimony in solido) amounts to $69,155, while the value of the property awarded Husband amounts to $28,600.

Although Husband had paid $90,000 for the property, it was only valued at only $65,000. Since the decision to buy the property for $90,000 was Husband's alone, it seems

Property at 608 New Shackle Island Road appraised at $65,000 - had a single wide trailer with an addition built onto it and a barn. Appraiser didn't add any value for the structures. Tax appraisal = $68,000?

and was comprised of a Chase line of credit with a balance of $14,887, and a Chase mortgage with a balance of $88,631.

Wife's 2008 W-2 and 1040 showed wages of $28,115. social security income was more.

Both parties worked during the marriage and contributed their earnings to the household expenses.