FILED
06/03/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## TIMOTHY EUGENE KEEBLE v. CRYSTAL YVONNE KEEBLE

**Appeal from the General Sessions Court for Loudon County**
**No. 17-DV-41      Rex Alan Dale, Judge**

_____

### No. E2019-01168-COA-R3-CV
_____

This is a divorce case.  Husband/Appellant appeals the trial court's: (1) decision denying Husband credit for premarital payments he made on certain marital assets; (2) division of certain marital assets and debts; (3) award of transitional alimony to Wife; (4) award of alimony *in solido* to Wife; and (5) calculation of the amount of child support.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J. joined.

Amanda A. Smith, Lenoir City, Tennessee, for the appellant, Timothy Eugene Keeble.

Melanie Hogg, Knoxville, Tennessee, for the appellee, Crystal Yvonne Keeble.

### OPINION

### I. Background

Appellant Timothy Keeble ("Husband") and Appellee Crystal Keeble ("Wife") were married in December 1998.  The parties have one child, who was born in May 2002.  At the time of separation, Husband owned and operated a business as a manufacturing representative.  Husband initially conducted his business through Keeble Rescue Systems, LLC ("KRS"); after KRS was dissolved, its assets and debts transferred to Husband's new business, Lifting Solutions, LLC ("Lifting Solutions").  Wife was a homemaker and stay-at-home mother for part of the marriage, but she worked as an administrative assistant in the few years preceding the parties' divorce.  At the time of

separation, the parties owned three parcels of real estate: (1) 427 Dairy Lane ("Dairy Lane Property"); (2) 3421 Vineyard Road ("Vineyard Road Property"); and (3) 1420 Estes Road ("Estes Road Property"). During the marriage, Husband received an inheritance, which included a fourth piece of real estate, 2360 Sandy Shore Road ("Sandy Shore Road Property").

Related to the parties' real property, on October 21, 2009, Husband, acting as Managing Member of KRS, signed a promissory note (the "Note") between KRS and Husband's parents in the amount of $89,000.00. The loan was secured by a Deed of Trust on the Vineyard Road Property. The last payment made on the Note was in November 2012; at the time of the divorce, a balance of $70,549.00 remained on the Note. Husband's parents died in 2013 and 2015 without the Note being satisfied, and no action has been filed to collect the balance on the Note.

On February 14, 2017, Husband filed a complaint for divorce against Wife in the General Sessions Court for Loudon County, Tennessee ("trial court"). As grounds, Husband alleged inappropriate marital conduct and irreconcilable differences. On February 21, 2017, Wife filed an answer and counter-complaint for divorce. In her answer, Wife admitted that the parties had irreconcilable differences but denied inappropriate marital conduct on her part. In her counter-complaint for divorce, Wife also alleged irreconcilable differences and inappropriate marital conduct by Husband. On March 14, 2017, Husband filed an answer to the counter-complaint denying inappropriate marital conduct.The case was tried on January 31, 2019. That same day the trial court entered an Agreed Permanent Parenting Plan (the "Parenting Plan"), which provided for an agreed co-parenting schedule, but reserved the issue of child support. Under the Parenting Plan, Husband was named primary residential parent and was granted 255 days with the child; Wife was given 110 days with the child.

On April 15, 2019, the trial court entered an order, which granted the parties a divorce based on irreconcilable differences and divided the marital property and debts. As is relevant to this appeal, the trial court: (1) awarded Wife the Dairy Lane and Estes Road Properties; (2) awarded Husband the Vineyard Road Property without offsetting its value by $70,549.00 remaining on the Note; (3) charged Wife with the debt on the Dairy Lane Property; (4) charged Husband with the debt on the Estes Road Property; (5) ordered Husband to pay Wife $1,000.00 per month in transitional alimony; (6) ordered Husband to pay Wife $14,000.00 in alimony *in solido* for her attorney's fees; and (7) reserved the issue of child support. On June 24, 2019, the trial court entered a final order, which, in pertinent part, set Wife's monthly child support obligation at $170.00 per month. Husband appeals.

## II. Issues

Husband raises several issues for review, which we restate as follows:

1. Whether the trial court erred in awarding Husband a $41,400.00 marital property credit as an acknowledgment of Husband's premarital down payment on the Dairy Lane Property.

2. Whether the trial court erred in failing to credit Husband for mortgage payments he made on the Dairy Lane Property prior to marriage.

3. Whether the trial court erred in ordering Husband to pay off the mortgage on the Estes Road Property before Wife sold or refinanced it.

4. Whether the trial court erred in failing to credit Husband for his separate property contribution toward the purchase of the Estes Road Property.

5. Whether the trial court erred in finding that the issue concerning the Note was not justiciable and declining to include the $70,549.00 payoff amount as a debt on the Vineyard Road Property.

6. Whether the trial court erred in awarding Wife transitional alimony and alimony *in solido* for attorney's fees.

7. Whether the trial court erred in setting Wife's child support obligation at $170.00 per month.

Both parties request attorneys' fees on appeal.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Procedural Deficiencies

Both parties' briefs contain procedural defects, which result in the waiver of several issues. We will address these shortfalls before proceeding with adjudication of the remaining issues.

## 1. Facts Considered on Appeal

Throughout his appellate brief, Husband presents many factual allegations that are not supported by the record. The only facts this Court may consider on appeal are those "established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14." Tenn. R. App. P. 13(c).[1] Tennessee Rule of Appellate Procedure 14 states that appellate courts may consider "facts concerning the action that occurred *after* judgment." Tenn. R. App. P. 14 (emphasis added). However, under Rule 6 of the Tennessee Rules of the Court of Appeals, this Court will not consider an assertion of fact on appeal "unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded." Tenn. R. Ct. App. 6(b).

Husband includes several alleged facts in his appellate brief without citations to the record. These facts concern two of his stated issues. His first issue/argument is that he "should receive credit for the eight house payments he made on the Dairy Lane note ($80,000.00 amortized over 15 years) prior to the marriage for a total of $3,552 (8 months at $444.00 excluding interest) in premarital payments on the loan." In its order, the trial court explained that

> Husband did not provide proof of any payments by him of the amount of mortgage payments on the original mortgage [for the Dairy Lane Property] paid by him from his separate property from the time of the purchase to the time of the parties' marriage, a period of approximately nine months. As such, no additional pre-marriage separate payment credits are awarded to Husband.

In the absence of any facts to support his claim for reimbursement of the alleged mortgage payments on the Dairy Lane Property, the trial court properly denied his claim.Husband also maintains that he is entitled to a $75,300.00 credit for his alleged separate property contribution to the parties' Estes Road Property. In his appellate brief, Husband admits that

---

[1] Judicial notice is

"a method of dispensing with the necessity for taking proof." ***State ex rel. Schmittou v. City of Nashville***, 345 S.W.2d 874, 883 ([Tenn.] 1961). "[It] is generally defined as a judge's utilization of knowledge other than that derived from formal evidentiary proof in the pending case." ***Counts v. Bryan***, 182 S.W.3d 288, 291 (Tenn. Ct. App. 2005) . . . . Historical facts, such as who, what or when, are more likely to satisfy this criteria, as opposed to opinions, which are more likely to be subject to dispute. [***Counts***, 182 S.W.3d at 293].

***Bank of Am., Nat'l Ass'n v. Meyer***, No. M2014-01123-COA-R3-CV, 2015 WL 1275394, at *2-3 (Tenn. Ct. App. Mar. 17, 2015).

no testimony was taken regarding his documented contribution to the paydown on the Estes Road property but [he] rather relies upon the court, pursuant to Rule 13 of the Rules of Appellate Procedure, to take judicial notice of his contribution and adjust the division of this asset . . . .

The facts alleged, i.e., that Husband contributed premarital/separate assets toward marital property, are not subject to judicial notice because

> [a] judicially noticed fact must be one that is not subject to reasonable dispute. Tenn. R. Evid. 201(b). It must be either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Tenn. R. Evid. 201(b).

***Bank of Am., Nat'l Ass'n***, 2015 WL 1275394, at *2. Whether Husband contributed separate funds toward marital property is a question subject to reasonable dispute. ***Id.***; Tenn. R. Evid. 201(b). From our review, Husband produced no evidence in the trial court to support his contention that he made eight mortgage payments on the Dairy Lane Property with his separate funds; furthermore, he presented no evidence at trial to show that he contributed his separate funds to pay the parties' Estes Road Property loan. *See id.*; Tenn. R. Evid. 201(b). Now, at the appellate level, Husband seeks to introduce (by reference in his appellate brief and in appendices thereto) evidence that should have been produced at trial. In fact, in response to Wife's motion to strike, this Court has previously ruled that documents related to the parties' real property that were not presented to the trial court but were attached as appendices to Husband's appellate brief were not part of our record and, as such, were outside the scope of our review. Although, in response to Wife's motion, Husband argued that "Rule 13 of the Tennessee Rules of Civil Procedure permits the consideration of those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to Rule 14," we explained that

> while Rule 13 of the Tennessee Rules of Appellate Procedure does address the facts that may be considered on appeal, the documents contained in the appendices were not established by evidence in the trial court and set forth in the record, are not properly subject to judicial notice, and are not post-judgment facts pursuant to Tenn. R. App. P. 14.

In view of the foregoing ruling, we will not review the proof set out in the appendices to Husband's brief. As discussed above, Husband did not tender sufficient proof at trial to support his appellate arguments concerning any separate property payments on the Dairy Lane and Estes Road Properties, and we will not consider his appellate issues on these subjects.

## 2. Statement of Appellate Issues

The contents of appellate briefs are governed by Rule 27 of the Tennessee Rules of Appellate Procedure. According to the rule, the appellant's brief shall contain "[a] statement of the issues presented for review . . . ." Tenn. R. App. P. 27(a)(4). Similarly, "if appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief . . . ." Tenn. R. App. P. 27(b). Both parties request attorney's fees on appeal, but neither party designates this as an issue in his or her appellate brief. Husband's only mention of appellate attorney's fees comes under the "Conclusion and Relief Sought" section of his brief. Similarly, Wife's only request for appellate attorney's fees comes under the "Conclusion" section of her brief.

The Tennessee Supreme Court has explained that

[]when a party is seeking attorney fees incurred on an appeal, that request, absent any statute or rule directing otherwise, must be directed first to the appellate court in a timely fashion.[] Our rules of appellate procedure require an appellant to set forth in his or her brief "[a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4). A claim for appellate attorney's fees is an issue that should be set before the appellate court because a remand to the trial court is not a foregone conclusion.

*Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410-11 (Tenn. 2006) (footnote omitted). "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4) [and 27(b)]. An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). By failing to include the issue of appellate attorneys' fees in their respective statements of the issues, the parties have waived the issue.

## 3. Failure to Argue

Despite properly designating other issues under Rule 27(a)(4), many of Husband's arguments concerning these issues fail to comply with Rule 27(a)(7)(A), which provides that an appellant's brief shall contain:

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the

- 6 -

> contentions require appellate relief, **with citations to the authorities and appropriate references to the record** (which may be quoted verbatim) relied on;

Tenn. R. App. P. 27(a)(7)(A) (emphasis added). For example, Husband's entire argument concerning the debt on the Vineyard Road Property's is:

> In awarding Husband the Vineyard Road property without offset for the debt, the court's reliance upon **Story v. Walker**, [404 S.W.2d 803, 804 (Tenn. 1966)], fails to recognize that there is inherent conflict when a borrower fails to pay his lender. *Res ipsa loquitor* (sic). The monies received from [Husband's parents]—not from their son—were used to payoff the original note on the Vineyard Road property. Though the original lender was a more traditional lender in nature (United Community Bank), the value of the payoff using money from the non-traditional lender (Husband's parents) is exactly equal in value to that of the original loan proceeds and is deserving of judicial attention.
>
> Husband acknowledges the more compelling arguments regarding the Vineyard Road debt put forward by counsel for Wife in the Post Trial Memorandum (Tech. R. at 112, 113) but also avers that concurrent judicial recognition of this very real debt-comprised of real money used to pay off the traditional lender- would have been appropriate in making the equitable division of marital property in the case at bar.

In the first instance, Husband's "argument" fails to cite legal authority and/or appropriate references to the record as required by Rule 27(a)(7)(A) of the Tennessee Rules of Appellate Procedure. *See also* Tenn. R. Ct. App. 6(b). Husband's only legal citation concerning the alleged debt on the Vineyard Road Property is to the case that the trial court cites in support of its conclusion that the issue of the Note was "not justiciable." *See* **Story**, 404 S.W.2d at 804. Furthermore, Husband fails to provide any legal authority or argument concerning how the trial court erred in its determination. For example, Husband could have argued that the trial court's reliance on **Story** was misplaced, or he could have argued that the trial court committed reversible error in failing to enter its opinion on the Note and the debt. Instead, Husband cites the doctrine of "*res ipsa loquitor*" (sic) for the proposition that "there is inherent conflict when a borrower fails to pay his lender." *Res ipsa loquitur* is a Torts doctrine meaning "the thing speaks for itself." **Black's Law Dictionary** (11th ed. 2019). The doctrine provides "that, in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a *prima facie* case . . . ." This is not a Tort case, and the doctrine of *res ipsa loquitur* has no bearing on the question of the use of Husband's separate property to pay the Note on the Vineyard Road Property. In other words, Husband makes no argument concerning this issue and, as such, violates the mandates of Tennessee Rule of

- 7 -

Appellate Procedure 27(a)(7)(A). The issue is, therefore, waived.

Husband also fails to argue his issues concerning the trial court's award of transitional alimony and alimony *in solido* to Wife. As set out in his appellate brief the entirety of Husband's argument is:

> The inequities created by the valuation and lack of valuation of the Estes Road [Property] and Vineyard Road [Property] skewed the financial results of the final decree such that the award of transitional alimony in the amount of $48,000.00 and an additional $14,000.00 for attorney's fees is truly excessive. The notion that the "inferior economic circumstances . . ." of the wife entitle her to transitional alimony doesn't ring true in light of the current division of the marital real estate assets. While attorney's fees are in the discretion of the trial court, the reversal of a trail [sic] court's decision regarding attorney's fees may occur when the trial court "bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." ***Church v. Church***, 346 S.W.3d 474, 4867 [sic] (Tenn. Ct. App. 2010).

 "Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. The need of the recipient spouse, followed by the obligor's ability to pay, are the primary considerations in the determination of an award of alimony." ***Sullivan v. Sullivan***, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002) (citing ***Lancaster v. Lancaster***, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984); ***Goodman v. Goodman***, 8 S.W.3d 289, 295 (Tenn. Ct. App. 1999). Tennessee Code Annotated section 36-5-121(i) sets out relevant factors a court should consider in determining whether an alimony award is appropriate. *See* Tenn. Code Ann. § 36-5-121(i). Husband's "argument" omits any discussion of either the statutory factors or whether the trial court's factual findings concerning its alimony award were error. Instead, he merely argues that Wife's alimony award is "truly excessive" given the division of marital assets. Husband's only citation to legal authority concerns the standard of review this Court applies to a trial court's award of attorney's fees. *See **Church***, 346 S.W.3d at 487. This meager citation is insufficient to overcome the lack of citation to any other authority and the lack of any discussion of the trial court's specific findings. As such, this argument also fails to comply with Tennessee Rule of Appellate Procedure 27(a)(7)(A) and is waived.

Perhaps most glaring is Husband's lack of argument concerning the trial court's award of child support. In its entirety, Husband's "argument" on this subject states:

> In the court's Final Order, entered June 24, 2019, Wife's monthly child support payments were established at $170.00 per month. Husband avers that the amount of co-parenting by Wife in the case at bar is zero and requests recalculation of Wife's monthly child support payments to reflect

the current division of co-parenting.

Husband cites no legal authority, simply alleges that Wife has exercised no visitation with the Child, and asks this Court to recalculate Wife's child support obligation. Husband fails to cite to any evidence in the record to support his assertions. From our review, the amount of child support ordered by the trial court is based on the parenting plan, to which Husband agreed, yet Husband makes no assertion or argument that the parenting plan should be modified or that the trial court erred in adopting it. For these reasons, we conclude that this argument fails to comply with Tennessee Rule of Appellate Procedure 27(a)(7)(A). As such, the issue of child support is waived.

The fragments of Husband's brief that discuss the Note and the Vineyard Road Property, alimony, and child support neither develop his arguments nor cite authority to support his positions. Tenn. R. App. P. 27(a)(7)(A); *Branum v. Akins*, 978 S.W.2d 554, 557 n. 2 (Tenn. Ct. App. 1998) (internal citations omitted) ("Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed waived and will not be considered on appeal."). "This [C]ourt has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal." *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (citing *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.")); *see also Tellico Village Property Owners Ass'n, Inc. v. Health Solutions, LLC*, No. E2012-00101-COA-R3-CV, 2013 WL 362815, at *3 (Tenn. Ct. App. Jan. 30, 2013) (*no perm. app. filed*). As this Court has previously stated:

> "[T]his Court is not charged with the responsibility of scouring the appellate record for any reversible error the trial court may have committed." [*Owen v. Long Tire*, LLC, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011)]. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

***

> "[T]he Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not

comply with the rules of this Court." ***Bean***, 40 S.W.3d at 54-55 (citing ***Crowe v. Birmingham & N.W. Ry. Co.***, [1 S.W.2d 781] (1928)). "[A]ppellate courts may properly decline to consider issues that have not been raised and briefed in accordance with the applicable rules." ***Waters v. Farr***, 291 S.W.3d 873, 919 (Tenn. 2009). "We have previously held that a litigant's appeal should be dismissed where his brief does not comply with the applicable rules, or where there is a complete failure to cite to the record." ***Commercial Bank, Inc. v. Summers***, No. E2010-02170-COA-R3-CV, 2011 WL 2673112, at *2 (Tenn. Ct. App. July 11, 2011).

*Clayton v. Herron*, No. M2014-01497-COA-R3-CV, 2015 WL 757240, at *2-3, (Tenn. Ct. App. Feb. 20, 2015) (*no perm. app. filed*). Here, Husband has "merely construct[ed] . . . skeletal argument[s]" concerning the Note and Vineyard Road Property, Wife's alimony award, and her child support obligation. ***Sneed***, 301 S.W.3d at 615. As a result, he has waived these issues. We now turn to address the remaining issues.

## V. Analysis

### 1. Dairy Lane Property

Husband disputes the trial court's characterization of the Dairy Lane Property as marital property and its treatment of Husband's $41,400.00 premarital contribution to the down payment on the property. The Tennessee Supreme Court has explained that

> Tennessee is a "dual property" state because its domestic relations law recognizes both "marital property" and "separate property." *See generally* Tenn. Code Ann. § 36-4-121; ***Eldridge v. Eldridge***, 137 S.W.3d 1, 12 (Tenn. Ct. App. 2002). When a married couple seeks a divorce, the "marital property" must be divided equitably between them, without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). "Separate property" is not part of the marital estate and is therefore not subject to division. *See* [***Cutsinger v. Cutsinger***, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995)]. Thus, it is imperative that the parties, the trial court, or both identify all of the assets possessed by the divorcing parties as either marital or separate so that a proper division can be accomplished.

*Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Tennessee Code Annotated section 36-4-121 defines marital property and separate property, in relevant part, as follows:

(b) For purposes of this chapter

   (1)(A) "Marital property" means all real and personal property, both

- 10 -

tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . . All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property;

\*\*\*

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage . . . .

Tenn. Code Ann. § 36-4-121(b).

In addition to the provisions of Tennessee Code Annotated section 36-4-121, Tennessee courts have recognized two methods by which separate property may be converted into marital property, i.e., commingling and transmutation:

[S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (brackets and ellipses in original) (citations omitted).

Concerning our review of the trial court's classification of property in a divorce,

"[q]uestions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual." [*Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007)] (citations omitted). As such,

- 11 -

we employ the familiar standard of review outlined in Rule 13(d) of the Tennessee Rules of Appellate Procedure. ***Bilyeu v. Bilyeu***, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

***Bewick v. Bewick***, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *7 (Tenn. Ct. App. Feb. 13, 2017).

Regarding the Dairy Lane Property, the trial court found:

Husband purchased the property on March 16, 1998, in his name only by warranty deed for $121,400 six months prior to [the parties'] marriage on December 21, 1998, with a mortgage in the amount of $80,000.00. . . . Husband paid a down payment of $41,400.00 at the time of the purchase from his separate assets. No proof was introduced that Wife had any input as to research, visits, or choice in the purchase of the property. The parties used this property as their martial residence for the duration of their eighteen year marriage. The remainder of the mortgage was paid off by marital income of the parties at some point during their marriage.

\*\*\*

From the time the parties were married and for the duration of their marriage Husband used marital funds to pay on the original mortgage, property taxes, insurance, and payments on the open-end mortgage. Husband testified that he never intended the property to become marital property and that the property title was never changed to include Wife on the title. Wife did not dispute this testimony.

. . . [T]he parties intended to treat the Dairy Lane residence as their marital property for the duration of their marriage and the property transmuted from Husband's separate property to marital property. Equitable division of this property shall allow a credit to Husband of the initial $41,400.00 he paid at the time of purchase as separate property. . . . Husband['s] . . . $41,400.00 premarital purchase credit . . . [will be] a lien on the purchase or refinance proceeds to be received from the Wife's sale or refinance of the [Estes Road Property] . . . .

The record supports the trial court's findings and conclusions. Although Husband purchased the Dairy Lane Property prior to the marriage, the parties treated the property as their marital residence. Under the foregoing authority, this resulted in transmutation of the Dairy Lane Property from Husband's separate property into the parties' marital property. The transmutation is further evidenced by Wife's occupancy of the Dairy Lane Property as her residence at the time of divorce (Husband lived in the Sandy Shore Road

Property he inherited from his parents). As very recently explained by this Court:

> "[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 256 (Tenn. 2009) (quoting *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)). In determining intent, "the ultimate test is how the property was treated by the parties." *Strickland v. Strickland*, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at *17 (Tenn. Ct. App. Dec. 21, 2012). Factors include (1) the use of the property by the family or to support the marriage; (2) shared control, maintenance, or management of the property; (3) titling the property jointly; and (4) use of the non-owner spouses' credit or separate funds to pay for or improve the property. *Luplow v. Luplow*, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014) (quoting *Fox*, 2006 WL 2535407, at *3); 2 John Tingley and Nicholas B. Svalina, Marital Property Law § 42:30 (2d ed.); *see also* *Woodward v. Woodward*, 240 S.W.3d 825, 829 (Tenn. Ct. App. 2007) (use as marital residence); *McClellan v. McClellan*, 873 S.W.2d 350, 352 (Tenn. Ct. App. 1993) (intent to use as permanent family home); *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995) (use of marital and non-owner spouse's funds).

*Anderson v. Anderson*, No. M2018-01248-COA-R3-CV, 2019 WL 3854663, at *5 (Tenn. Ct. App. Aug. 16, 2019). By operation of transmutation, any separate interest Husband had in the Dairy Lane Property based on his premarital contribution became marital property and was subject to equitable division between the parties.

Nonetheless, to acknowledge Husband's premarital contribution, the trial court awarded him a $41,400.00 credit against Wife's share of the Estes Road Property. From our review, it appears that the trial court erred in listing this credit under both Husband's marital property column and his separate property column on the spreadsheet attached to its order. This error, however, was harmless because Husband's separate property was not part of the marital estate and, therefore, not subject to division. Tenn. R. App. P. 36 (b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."); *Snodgrass*, 295 S.W.3d at 246. In other words, Husband received the entirety of his separate property, despite the fact that the trial court's error inflated that number. Therefore, we affirm the trial court's $41,400.00 credit to Husband for his premarital contribution to the Dairy Lane Property from Wife's portion of the marital property. We also conclude that the trial court's inclusion of this credit under Husband's separate property column, while error, was harmless.

## 2. Estes Road Property

Concerning the Estes Road Property, the trial court's April 15, 2019 order provides:

> The court awards Husband his $41,400.00 premarital purchase credit as a lien on the purchase or refinance proceeds to be received from the Wife's sale or refinance of the 1420 Estes Road property after Husband satisfies the existing mortgage balance on that property in the amount of $71,724.37.

In his brief, Husband argues that "there is no order of divestiture for the Estes Road [P]roperty nor is there a deadline [for] the accomplishment of either the sale or refinance of the Estes Road [P]roperty by Wife." Husband asks this Court for "direction regarding post-divorce titling of the Estes Road [P]roperty." As set out above, the trial court awarded the Estes Road Property to Wife but charged the debt on the property to Husband. In its order, the trial court acknowledged that Wife could sell or refinance the Estes Road Property "after Husband satisfies the existing mortgage balance on that property in the amount of $71,724.37," but the court did not mandate that she do so. Therefore, according to the trial court's instructions, Husband's $41,400.00 is secured by a lien on the Estes Road Property, but he must pay off the mortgage on the property before he is entitled to recoup this amount from Wife. In other words, Wife cannot act until Husband acts, and Husband has the autonomy to act at any time to pay off the mortgage balance so that he may recoup his $41,400.

## VI. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed against the Appellant, Timothy Eugene Keeble, for all of which execution may issue if necessary.

 

_____
KENNY ARMSTRONG, JUDGE